DONALD ARNDT, Plaintiff v. FIRST UNION NATIONAL BANK, FIRST UNION CORPORATION and WACHOVIA CORPORATION, Defendants

No. COA04-807

(Filed 7 June 2005)

**1. Employer and Employee— bank vice president—annual bonus—oral contract**

Evidence presented by both parties presented an issue of fact for the jury as to whether an oral contract existed between plaintiff bank vice president and defendant bank under which plaintiff would receive an annual bonus of twenty percent of all net income he generated for the bank in the "structured products group."

**2. Employer and Employee— Wage and Hour Act—modification of annual bonus—failure to give notice**

The evidence supported the jury's finding that defendant bank modified plaintiff bank vice president's annual bonus for-

ARNDT v. FIRST UNION NAT'L BANK

[170 N.C. App. 518 (2005)]

mula without giving plaintiff notice of the change in violation of N.C.G.S. § 95-25.13(3) of the N.C. Wage and Hour Act. Although defendant bank gave plaintiff notice of the bank's incentive compensation program (ICP) which began and ended each calendar year, these notices did not apply to plaintiff because the evidence showed that plaintiff's bonus and compensation structure was unique to him and different from the generic ICP plans applicable to defendant bank's other employees.

3. **Employer and Employee— breach of contract—instructions—existence of contract—acquiescence—estoppel—spoliation**

The trial court did not err in a breach of contract and violation of the North Carolina Wage and Hour Act case by its instruction to the jury on the existence of a contract, by instructing that defendant was required to prove plaintiff acquiesced to the bonus formal change, by failing to instruct the jury on estoppel, and by instructing the jury on spoliation of the evidence.

4. **Employer and Employee— liquidated damages—North Carolina Wage and Hour Act**

The trial court did not abuse its discretion in a breach of contract and violation of the North Carolina Wage and Hour Act (NCWHA) case by awarding plaintiff liquidated damages pursuant to N.C.G.S. § 95-25.22, because: (1) even if an employer shows that it acted in good faith and with the belief that its action did not constitute a violation of the NCWHA, the trial court may still in its discretion award liquidated damages in any amount up to the amount due for unpaid wages; (2) defendants neither offer evidence showing nor argue how the trial court's decision to award liquidated damages was so arbitrary that it could not have been the result of a reasoned decision; and (3) a review of the record did not indicate the trial court's decision to impose liquidated damages was manifestly unsupported by reason.

Appeal by defendants from orders and judgment entered 31 October 2003 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 2 February 2005.

*Robert M. Elliot and J. Griffin Morgan, for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Charles E. Johnson and Daniel F. Basnight, for defendants-appellants.*

ARNDT v. FIRST UNION NAT'L BANK

[170 N.C. App. 518 (2005)]

TYSON, Judge.

First Union National Bank ("First Union"), First Union Corpo-
ration, and Wachovia Corporation ("Wachovia") (collectively,
"defendants") appeal the trial court's orders and judgment filed 31
October 2003 finding: (1) Donald Arndt ("plaintiff") and First Union
entered into a contract where First Union would pay plaintiff an
annual bonus; (2) First Union modified plaintiff's bonus formula with-
out his consent; (3) First Union breached its contract with plaintiff
concerning his bonus formula; (4) First Union failed to give plaintiff
notice of the change in the bonus formula; and (5) Wachovia owes
plaintiff $837,243.40 plus interest and costs. We find no error.

## I. Background

Plaintiff worked as a senior vice president in the "Structured
Products Group" for First Union from 3 June 1996 to 9 February 2001.
Plaintiff's initial compensation was $90,000.00 per year in salary plus
a "guaranteed minimum incentive payment of $90,000.00." After start-
ing employment, plaintiff and Brian Simpson ("Simpson"), manager of
the Structured Products Group, orally agreed plaintiff would be paid
twenty percent of all net income he earned for First Union. The for-
mula to compute the bonus was not discussed. In 1996, 1997, and
1998, plaintiff was paid twenty percent of the income he generated
for First Union.

In 1998, First Union decided to change its bonus formula to a
more "subjective" determination. Despite this change, plaintiff's
bonus for year 1999 remained at twenty percent of the net income he
produced for First Union. However, plaintiff's bonus for year 2000 fell
to roughly ten percent, half of the usual amount. Simpson contended
the decrease was due to a financial loss First Union suffered on a
project upon which plaintiff was working on, and his poor ratings in
"teamwork . . . leadership . . . [and] inability to work well with others."

Plaintiff contacted Deidre Bradshaw ("Bradshaw") in First
Union's Human Resources Department, to discuss the decrease in his
compensation. When it became apparent that First Union would not
pay plaintiff according to the prior bonus structure, plaintiff informed
Bradshaw that he would seek "appropriate remedies."

Plaintiff filed a complaint against defendants on 12 March 2002
for: (1) breach of contract; (2) violation of the North Carolina Wage
and Hour Act ("NCWHA"); and (3) fraud. Defendants answered on 28
May 2002 and simultaneously filed a motion to dismiss the claim for

ARNDT v. FIRST UNION NAT'L BANK

[170 N.C. App. 518 (2005)]

fraud. Plaintiff voluntarily dismissed without prejudice his fraud claim. Throughout the discovery process, Bradshaw "represented the company" as the person on "point" and assisted defendants' counsel in responding to discovery requests.

The case was tried by jury from 22 to 26 September 2003 and 29 September to 1 October 2003. The jury found: (1) plaintiff and First Union entered into a contract where First Union would pay plaintiff an annual bonus; (2) First Union modified plaintiff's bonus formula without his consent; (3) First Union breached its contract with plaintiff concerning payment of his bonus compensation; (4) First Union failed to give plaintiff notice of the change in the bonus formula; and (5) Wachovia owes plaintiff $837,243.40 plus interest and costs.

Plaintiff moved the trial court for liquidated damages, attorneys' fees, costs, and interest. Defendants moved the trial court for judgment notwithstanding the verdict or new trial. The trial court ordered: (1) "Wachovia shall pay to Plaintiff the amount of $837,243.40 in liquidated damages;" (2) "Plaintiff shall recover interest on the amount awarded by jury in its verdict at the rate of 8% *per annum* from February 15, 2001, until the Judgment is satisfied;" and (3) "Wachovia shall pay to Plaintiff the amount of $5,377.31 in costs." The trial court denied plaintiff's motion for attorneys' fees and defendants' motion for judgment notwithstanding the verdict or new trial. Defendants appeal.

## II. Issues

Defendants argue the trial court erred in: (1) denying defendants' motion for directed verdict and judgment notwithstanding the verdict or new trial; (2) its instructions to the jury; and (3) abusing its discretion in awarding plaintiff liquidated damages.

## III. Directed Verdict and Judgment Notwithstanding the Verdict

Defendants argue the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict after plaintiff failed to offer sufficient evidence to establish: (1) an enforceable contract or subsequent breach; and (2) a violation of the NCWHA. We disagree.

### A. Standard of Review

Our Supreme Court has set forth the standard of review of a trial court's ruling on motions for a directed verdict and judgment notwithstanding the verdict.

The standard of review of directed verdict is whether the evidence, *taken in the light most favorable to the non-moving party*, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, *the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury.* Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, *this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.*

*Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (internal citations and quotations omitted) (emphasis supplied).

### B. Analysis

### 1. Breach of Contract

[1] In *Overall Co. v. Holmes*, our Supreme Court stated, "[a] contract is 'an agreement, upon sufficient consideration, to do or not to do a particular thing.' " 186 N.C. 428, 431, 119 S.E. 817, 818 (1923). The contract may be "express or implied, executed or executory, [and] results from the concurrence of minds of two or more persons . . . [I]ts legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree." *Id.* at 431-32, 119 S.E. at 818-19 (quoting *Prince v. McRae*, 84 N.C. 675 (1881)). "In the construction of a contract, the parties' intentions control, *Cordaro v. Singleton*, 31 N.C. App. 476, 229 S.E.2d 707 (1976)[,] and their intentions may be discerned from both their writings and actions." *Walker v. Goodson Farms, Inc.*, 90 N.C. App. 478, 486, 369 S.E.2d 122, 126 (1988) (citing *Bank v. Supply Co.*, 226 N.C. 416, 38 S.E.2d 503 (1946); *Zinn v. Walker*, 87 N.C. App. 325, 361 S.E.2d 314 (1987); *Heater v. Heater*, 53 N.C. App. 101, 280 S.E.2d 19 (1981)), *disc. rev. denied*, 323 N.C. 370, 373 S.E.2d 556 (1988).

Plaintiff offered evidence that: (1) when initially hired, he and Simpson orally agreed that plaintiff would receive twenty percent of the Structured Product Group's net income; (2) the agreement did not include an expiration date; (3) this agreement was separate from incentive plans offered to other employees; (4) defendants paid plaintiff's bonuses from 1997 to 1999 according to the terms of the agreement; (5) at no time did defendants modify the agreement, orally or in

writing; and (6) defendants breached this agreement by retroactively reducing plaintiff's year 2000 bonus. This evidence was presented to the jury through plaintiff's testimony and exhibits, including email correspondence between plaintiff and Simpson.

Plaintiff contends that the oral agreement with Simpson and the subsequent performance by defendants was evidence that "by both their words and actions the parties . . . had reached a 'meeting of the minds.' " *Fulk v. Piedmont Music CTR*, 138 N.C. App. 425, 430, 531 S.E.2d 476, 480 (2000) (citation omitted). Defendants argue the "sketchy" discussions between plaintiff and Simpson did not comprise a valid contract, and they assert plaintiff failed to show the parties agreed to the terms of the contract. Defendants also argue that if a contract existed between plaintiff and Simpson, it expired at the end of 1997 and was not perpetual. Defendants assert the true contract defining plaintiff's compensation was the annual Incentive Compensation Program ("ICP") which began and ended each calendar year. As an at-will employee, defendants contend plaintiff accepted the terms of this agreement by not "quitting."

The evidence presented by both parties creates an issue of fact concerning the existence of a contract. Whether a contract existed is a question for the jury. *See Goeckel v. Stokely*, 236 N.C. 604, 607, 73 S.E.2d 618, 620 (1952) (issues of fact concerning terms of a contract are for the jury to consider). Based upon plaintiff's testimony, as corroborated by the emails and the twenty percent bonuses defendants paid and plaintiff received in 1997, 1998, and 1999, a jury could find that the parties reached a clear and definite agreement regarding the details of the contract. *See Walker*, 90 N.C. App. at 486, 369 S.E.2d at 126 (the parties intentions may be shown through their agreement and subsequent actions).

Conflicts in the evidence are to be resolved in plaintiff's favor, and he "must be given the benefit of every inference reasonably to be drawn in his favor." *Williams v. Jones*, 322 N.C. 42, 48, 366 S.E.2d 433, 437 (1988) (citing *Daughtry v. Turnage*, 295 N.C. 543, 246 S.E.2d 788 (1978) (conflicts, contradictions, and inconsistencies are to be resolved in the non-movant's favor)).

Plaintiff has offered sufficient evidence to present a question of fact for the jury in regards to the existence of an oral contract and to sustain a jury's verdict in his favor. *Davis*, 330 N.C. at 323, 411 S.E.2d at 138 (citing *In re Housing Authority*, 235 N.C. 463, 70 S.E.2d 500 (1952)). The trial court properly denied defendants' motions for

directed verdict and judgment notwithstanding the verdict. This portion of defendants' assignment of error is overruled.

## 2. Violation of the NCWHA

[2] The jury found defendants' actions violated the NCWHA, N.C. Gen. Stat. § 95-25.1 *et seq.* Specifically, plaintiff proffered evidence that: (1) he was promised wages by the oral agreement with Simpson under N.C. Gen. Stat. § 95-25.2(16); and (2) defendants changed his compensation plan without prior notice under N.C. Gen. Stat. § 95-25.13.

N.C. Gen. Stat. § 95-25.13(3) (2003) provides that every employer shall "[n]otify its employees, in writing or through a posted notice maintained in a place accessible to its employees, of any changes in promised wages prior to the time of such changes except that wages may be retroactively increased without the prior notice required by this subsection." *See Narron v. Hardee's Food Systems, Inc.*, 75 N.C. App. 579, 583, 331 S.E.2d 205, 208 ("[T]he Wage and Hour Act requires an employer to notify the employee in advance of the wages and benefits which he will earn and the conditions which must be met to earn them, and to pay those wages and benefits due when the employee has actually performed the work required to earn them."), *disc. rev. denied*, 314 N.C. 542, 335 S.E.2d 316 (1985).

> "Wages" include " 'compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation . . . For the purposes of G.S. 95-25.6 through 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, *bonuses, and other amounts promised when the employer has a policy or practice of making such payments.*' "

*Murphy v. First Union National Bank*, 152 N.C. App. 205, 208, 567 S.E.2d 189, 191-92 (2002) (quoting N.C. Gen. Stat. § 95-25.2(16)) (emphasis supplied).

Defendants assert: (1) they did not decrease plaintiff's "promised wages;" and (2) they gave plaintiff notice of the applicable 1999 and 2000 ICP plans. We have held that plaintiff offered sufficient evidence to support the jury's finding that a contract existed between plaintiff and defendants concerning plaintiff's bonus structure that was ongoing beyond 1997. In addition, the evidence showed plaintiff's bonus and compensation structure was unique to him and different from the generic ICP plans applicable to defendants' other employees. The

notices defendants assert were provided in accordance with the NCWHA did not apply to plaintiff. Defendants' arguments are without merit. This assignment of error is overruled.

## IV. Jury Instructions

**[3]** Defendants assert the trial court erred in: (1) its instruction to the jury on the existence of a contract; (2) instructing the jury that First Union was required to prove plaintiff *acquiesced* to the bonus formula change; (3) failing to instruct the jury on estoppel; and (4) instructing the jury on spoliation of the evidence.

### A. Standard of Review

On appeal, this Court must review and consider jury instructions "in their entirety." *Estate of Hendrickson v. Genesis Health Venture*, 151 N.C. App. 139, 150-51, 565 S.E.2d 254, 262 (citing *Robinson v. Seaboard System R.R., Inc.*, 87 N.C. App. 512, 361 S.E.2d 909 (1987), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988)), *disc. rev. denied*, 356 N.C. 299, 570 S.E.2d 503 (2002). The "appealing party must show not only that error occurred in the jury instructions but also that such error was likely, in light of the entire charge, to mislead the jury." *Id.* The trial court is "required to instruct a jury on the law arising from the evidence presented." *Lusk v. Case*, 94 N.C. App. 215, 216, 379 S.E.2d 651, 652 (1989); N.C. Gen. Stat. § 1A-1, Rule 51 (2003).

### B. Existence of a Contract

The trial court instructed and presented to the jury the following query: "Did the plaintiff, Donald Arndt and the defendant, First Union National Bank enter into a contract by which First Union National Bank agreed to pay plaintiff an annual bonus, for 1997 and succeeding years, based on 20 percent of the annual net income, of the tax related securities group?" The court's instruction continued by detailing the elements of a contract that plaintiff must prove by a greater weight of the evidence. We have already held that plaintiff proffered sufficient evidence to show a contract existed between himself and defendants concerning an annual bonus to survive defendants' motions for directed verdict and judgment notwithstanding the verdict. This portion of defendants' assignment of error is overruled.

### C. Acquiescence

The second instruction to the jury concerned plaintiff's alleged acquiescence to the changed bonus structure. Defendants assert the trial court "erroneously ignored [plaintiff]'s status ·as an at-will

employee and [defendants'] right to modify the incentive programs affecting its at-will employees at any time." Our review of the transcript indicates the trial court properly instructed the jury on plaintiff's at-will employment with defendants and its legal effect to changes in compensation:

> The parties to this action have agreed that the plaintiff is an employee at will. *[An] employee at will is an employee whose employment can be determined, at any time, by the employee [or] the employer.* There is no definite length of employment. The employment relationship continues until it is terminated by either party. The terms of the employment remain in effect until they are modified, by either—either agreement of the parties or by the employer, unilaterally. The employer, in an at will relationship, can modify, unilaterally the future compensation to be paid to an employee. If the employer modifies the terms of an employed, at will; and, the employee knows of the change, the employee is deemed to have *acquiesced* to the modified terms, if he continues in the employment relationship.

(Emphasis supplied). The trial court properly charged the jury on the issues of plaintiff's at will employment and his possible acquiescence to changes defendants alleged concerning his compensation package. This portion of defendants' assignment of error is overruled.

### D. Estoppel

The trial court denied defendants' request for an instruction on estoppel. Specifically, defendants argued plaintiff was estopped from asserting that the generic ICP plan did not apply to him after acceptance of the benefits of the ICP plan, his annual bonuses. The trial court's instructions to the jury, when viewed "in their entirety," sufficiently present defendants' arguments to the jury whether: (1) the generic ICP plan applied to plaintiff; and (2) the bonuses he received after 1997 were provided in accordance with that generic ICP plan. Defendants do not argue and our review of the transcript does not show how the trial court's decision to not instruct the jury on estoppel was error, and in light of the entire charge, likely to mislead the jury. *See Estate of Hendrickson*, 151 N.C. App. at 150-51, 565 S.E.2d at 262. This portion of defendants' assignment of error is overruled.

### E. Spoliation of the Evidence

Defendants argue plaintiff's evidence did not support an instruction to the jury on spoliation of evidence and that they were unfairly

prejudiced by the instruction. The basis for the instruction concerned plaintiff's discovery request of: (1) 1999 and 2000 profit and loss statements; and (2) the text of two emails.

The trial court provided the following instruction to the jury:

> Evidence has been received that tends to show that certain profit and loss statements and E-mails were in the exclusive possession of the defendant, First Union; and, [sic] have not been produced for inspection, by the plaintiff or his counsel, even though defendant, First Union, was aware of the plaintiff's claim. From this, you may infer, though you are not compelled to do so, that the profit and loss statements and the E-mails would be damaging to the defendant. You may give this inference such force and effect as you think it should have, under all the facts and circumstances. You are permitted this inference, even if there is no evidence that the defendant acted intentionally, negligently or in bad faith. However, you should not make this inference, if you find that there a [sic] fair frank and satisfactory explanation for the defendant's failure to produce the documents.

In *Yarbrough v. Hughes*, our Supreme Court considered spoliation of evidence and held, "where a party fails to introduce in evidence documents that are relevant to the matter in question and within his control . . . there is a presumption or at least an inference that the evidence withheld, if forthcoming, would injure his case." 139 N.C. 199, 209, 51 S.E. 904, 907-08 (1905). This Court also addressed spoliation in *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 527 S.E.2d 712, *disc. rev. denied*, 352 N.C. 357, 544 S.E.2d 563 (2000). In *McLain*, we held that lost evidence creates a permissible "adverse inference," not a mandatory presumption. 137 N.C. App. at 185, 527 S.E.2d at 717 (quotation omitted). We further noted, "[w]hen the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized inquiry, a factfinder may reasonably infer that the party probably did so because the records would harm its case." *Id.* at 187-88, 527 S.E.2d at 718 (citing *Blinzler v. Marriott International, Inc.*, 81 F.3d 1148, 1158-59 (1st Cir. 1996)). The factfinder *is free* to determine "the documents were destroyed accidentally or for an innocent reason" and reject the inference. *McLain*, 137 N.C. App. at 185, 527 S.E.2d at 717 (citing *Blinzler*, 81 F.3d at 1159).

"[T]o qualify for the adverse inference, the party requesting it must ordinarily show that the 'spoliator was on notice of the claim or

potential claim at the time of the destruction.' " *McLain,* 137 N.C. App. at 187, 527 S.E.2d at 718 (quotation omitted). The obligation to preserve evidence may arise prior to the filing of a complaint where the opposing party is on notice that litigation is likely to be commenced. *Id.* (citation omitted). The evidence lost must be "pertinent" and "potentially supportive of plaintiff's allegations." *Id.* at 188, 527 S.E.2d at 718. Finally, "[t]he proponent of a 'missing document' inference need not offer direct evidence of a coverup to set the stage for the adverse inference. Circumstantial evidence will suffice." *Id.* at 186, 527 S.E.2d at 718 (citing *Blinzler,* 81 F.3d at 1159).

### 1. Notice

Plaintiff presented evidence that Bradshaw, First Union's human resources partner, was on notice and had detailed knowledge of plaintiff's claims. Bradshaw testified she was on "point" for defendants with this matter and was "representing the company" during these proceedings. She was "the person who has been relied upon to provide documents and to verify answers in the discovery requests" and "signed all the verifications that had to go with the discovery requests."

Having shown Bradshaw was very familiar with the case, plaintiff specifically addressed defendants' notice of his claims. Bradshaw testified that she handled plaintiff's questions concerning his compensation during his employment. When questions arose over plaintiff's compensation, he contacted her. Plaintiff introduced two emails addressed to Bradshaw concerning issues and nonpayment of his compensation. The first email inquired of defendants' proper procedure to contest and appeal nonpayment of his compensation. The second email was sent to Bradshaw after plaintiff determined a favorable resolution was not forthcoming. It asserted that if his compensation was not addressed "in an expedient and professional manner[, plaintiff would have] . . . no recourse but to seek appropriate remedies."

Bradshaw testified that she knew in February 2001 plaintiff was terminating his employment with defendants due to nonpayment of compensation he claimed. As the person on "point," Bradshaw acknowledged receiving a letter from plaintiff's counsel in March 2001 concerning an impending claim. Given Bradshaw's in-depth knowledge of the issues, this evidence shows defendants were on notice early on of plaintiff's intent to file a claim. *See McLain,* 137 N.C. App. at 187, 527 S.E.2d at 718 ("we believe the evidence that . . . [a party's] representative . . . was 'aware of the circumstances that

ARNDT v. FIRST UNION NAT'L BANK

[170 N.C. App. 518 (2005)]

[were] likely to give rise to future litigation . . . .' ") (citing *Blinzler*, 81 F.3d at 1158-59).

## 2. Pertinent and Supportive Information

The information plaintiff sought discovery of included: (1) an email plaintiff sent to Simpson in 2000 concerning distribution and payment of plaintiff's 1999 bonus; (2) an email from David Yorker ("Yorker") to Simpson in which Yorker documented a conversation in which Simpson agreed that the general ICP plan did not apply to plaintiff; and (3) 1999 and 2000 annual profit and loss financial statements.

Plaintiff sought the emails as evidence of his 1999 compensation and the non-application of the general ICP plan to him. Both documents were central to the issues at bar. Their importance is shown by the trial court's permission for plaintiff to testify about the emails despite their physical absence. The two financial statements requested were intended to support plaintiff's argument that he had a contract separate from defendants' general ICP plan. Plaintiff asserts that the 1999 profit and loss statements would show defendants acted in compliance with the oral contract during that year of his employment, as well as in prior years; a fact contested by defendants. The 2000 statements were relevant to plaintiff's damages. The information plaintiff sought is pertinent to the issues in dispute and supportive of his claims.

## 3. Additional Evidence

In addition to showing defendants' notice of and the pertinence of the information requested to the claim, plaintiff offered the following evidence showing defendants failed to preserve necessary information for the matters in dispute despite early and prior notice of their existence and importance.

Bradshaw testified during her deposition, which was later read into evidence:

QUESTION: Did you make any effort, when Don Arndt left, to preserve his E-mails, to preserve his hard drive, in his computer, to make sure that everything that was in the computer would be preserved?

. . . .

BRADSHAW: Not that I recall.

QUESTION: Does anybody do that, as a matter of course?

. . . .

BRADSHAW: I don't do that, as a matter of course.

. . . .

QUESTION: Who would you call if you had to call somebody to say, "Preserve this evidence?"

BRADSHAW: I would probably call someone in our technology group and ask them to do that.

QUESTION: Did you do that?

BRADSHAW: No.

QUESTION: Well, you knew, at least, at the time you got the letter from Mr. Arndt's lawyer that there was a claim involved in this case; didn't you?

. . . .

BRADSHAW: I didn't.

. . . .

QUESTION: You knew, when you received a copy of that letter, that there was a claim being made on Wachovia; didn't you, by Mr. Arndt?

BRADSHAW: Yes.

QUESTION: Did you make any effort to save his hard drive?

BRADSHAW: No.

Second, plaintiff showed the 1999 and 2000 profit and loss statements existed through: (1) defendants' provision of other years' statements; and (2) plaintiff's former assistant providing a copy of the 2000 profit and loss statement.

Plaintiff proffered both direct and circumstantial evidence indicating defendants allowed the destruction of pertinent documents while on notice of his claim. This evidence supported the trial court's instruction on spoliation of evidence. Defendants were provided opportunities to rebut this allegation by offering evidence to explain "the documents were destroyed accidentally or for an innocent reason," and the trial court instructed the jury accordingly. *McLain*, 137 N.C. App. at 185, 527 S.E.2d at 717. The trial court did not err in

charging the jury on spoliation of the evidence. This portion of defendants' assignment of error is overruled.

## V. Liquidated Damages

[4] Under N.C. Gen. Stat. § 95-25.22 (2003):

> (a) Any employer who violates the provisions of . . . G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee or employees affected in the amount of . . . their unpaid amounts due under G.S. 95-25.6 through 95-25.12, as the case may be, plus interest at the legal rate set forth in G.S. 24-1, from the date each amount first came due.

> (a1) In addition to the amounts awarded pursuant to subsection (a) of this section, the court shall award liquidated damages in an amount equal to the amount found to be due as provided in subsection (a) of this section, provided that if the employer shows to the satisfaction of the court that the act or omission constituting the violation was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Article, the court may, in its discretion, award no liquidated damages or may award any amount of liquidated damages not exceeding the amount found due as provided in subsection (a) of this section.

This Court determined in *Hamilton v. Memorex Telex Corp.* that the employer bears the burden to show liquidated damages should not be imposed. 118 N.C. App. 1, 14-15, 454 S.E.2d 278, 285, *disc. rev. denied,* 340 N.C. 260, 456 S.E.2d 830, *disc. rev. denied,* 340 N.C. 260, 456 S.E.2d 831 (1995). "[E]ven if an employer shows that it acted in good faith, and with the belief that its action did not constitute a violation of the [NCWHA,] the trial court may still, in its discretion, award liquidated damages in any amount up to the amount due for unpaid wages." *Id.* at 15, 454 S.E.2d at 285. If the employer is unable to make such a showing, the trial court is without discretion and must award liquidated damages. *Id.*

Defendants assert "the record is replete with evidence of First Union's good faith and reasonable belief" of its correct payment of plaintiff's bonus compensation for the year 2000. Defendants neither offer evidence showing nor argue how the trial court's decision to award liquidated damages was "so arbitrary that it could not have been the result of a reasoned decision." *White v. White,* 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Further, our review of the record does

TAYLOR v. CAROLINA REST. GRP., INC.

[170 N.C. App. 532 (2005)]

not indicate the trial court's decision to impose liquidated damages on defendants was "manifestly unsupported by reason." *Id.* This assignment of error is overruled.

## VI. Conclusion

The trial court properly denied defendants' motions for directed verdict and judgment notwithstanding the verdict. Plaintiff proffered sufficient evidence to support and the trial court did not err in determining and providing the jury instructions on: (1) existence of a contract; (2) acquiescence; and (3) spoliation of evidence. The trial court did not err in denying defendants' request for jury instructions on estoppel. The trial court did not abuse its discretion in awarding plaintiff liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22. We find no error in the jury's verdict in plaintiff's favor and the judgment entered thereon.

No error.

Judges McGEE and GEER concur.