BLONDALE HUGHES, Plaintiff v. EPIFANIO RIVERA-ORTIZ, M.D., and CALLAWAY ASSOCIATES, LLP, d/b/a PROMED OF NORTH CAROLINA, PLLC, Defendants

No. COA06-1582

(Filed 20 November 2007)

**1. Medical Malpractice— denial of motion for new trial—contradictory evidence**

The trial court did not abuse its discretion in a medical malpractice case by denying plaintiff's N.C.G.S. § 1A-1, Rule 59 motion for a new trial even though plaintiff contends the jury verdict of one dollar in nominal damages was a result of a compromise, because: (1) in light of the fact that defendant doctor was called to testify by plaintiff and was examined at length by defense counsel, it could not be said that the evidence was uncontradicted; (2) some of the evidence presented by plaintiff was contradictory and in part unfavorable to her position with regard to damages; (3) a psychiatrist who treated plaintiff and a clinician who counseled plaintiff both acknowledged that plaintiff's alleged emotional and psychological problems could be attributed to events in her life that predated the alleged assault by defendant; and (4) the evidence was conflicting as to what, if any, damages plaintiff was entitled to from the negligent actions of defendant.

**2. Appeal and Error— preservation of issues—cross-assignment of error—denial of motion for summary judgment—final judgment on merits**

Although defendant employer cross-assigned error based on plaintiff's alleged failure to submit any admissible evidence at summary judgment to prove misconduct by defendant doctor or to establish vicarious liability by defendant employer, this cross-assignment of error is dismissed because the denial of a motion for summary judgment is not reviewable on appeal from a final judgment on the merits.

**3. Medical Malpractice— erroneous denial of motion for directed verdict—ratification**

The trial court erred in a medical malpractice case by denying defendant employer's motion for directed verdict on the issue of whether it ratified defendant doctor's conduct in having sexual contact with plaintiff patient, because: (1) plaintiff waived review of this issue since even if the doctor was acting within the scope

of his employment, the trial court granted the employer's motion for directed verdict on the issue of respondeat superior, and plaintiff did not assign error to this ruling; (2) evidence is sufficient to submit the question of ratification to the jury only where defendant retained the negligent actor in defendant's employ, declined to intervene upon notification that sexual harassment had occurred, and ultimately fired the complaining party; (3) in this case the only factor on which plaintiff presented evidence was that the doctor was still in the employ of the employer, and this evidence standing alone was insufficient to find ratification; (4) there was no indication that the employer had knowledge before November 2004 of all material facts and circumstances relative to the wrongful act that occurred in September 2002; (5) it cannot be said that employer failed to intervene when the doctor was suspended for the remainder of the 2002 calendar year; and (6) plaintiff's expert witness testified that if the doctor's account of the incident were true, he would not have violated the standard of care.

Judge WYNN dissenting.

Appeal by plaintiff from judgment entered 31 October 2005 and from an order entered 30 November 2005 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 August 2007.

*Ferguson, Stein, Gresham & Sumter, P.A., by S. Luke Largess, for plaintiff-appellant.*

*Parker Poe Adams & Bernstein, LLP, by Harvey L. Cosper, Jr., Lori R. Keeton, and Leigh A. Kite, for defendant-appellee Epifanio Rivera-Ortiz, M.D.*

*Shumaker, Loop & Kendrick, LLP, by Scott M. Stevenson and S. Frederick Winiker, III, for defendant-appellee Callaway Associates, LLP, d/b/a Pro-Med Mobile Services, LLC.*

HUNTER, Judge.

Blondale Hughes ("plaintiff") filed a medical malpractice action on 23 January 2004, alleging that Dr. Epifanio Rivera-Ortiz ("Rivera-Ortiz") was negligent on 12 September 2002 in his care and treatment and that such negligence was imputed to Callaway[1] Associates, LLP

---

1. Defendant-Callaway's brief uses the spelling "Calloway" rather than "Callaway." All other documents use "Callaway," and we do the same.

d/b/a Promed of North Carolina PLLC ("Callaway").[2] The jury found Rivera-Ortiz negligent, and found that Callaway had ratified his actions. The jury awarded one (1) dollar in nominal damages. Plaintiff moved for a new trial under North Carolina Rule of Civil Procedure 59 (hereafter "Rule 59"), and the trial court denied that motion. Plaintiff appeals the denial of her Rule 59 motion, and Callaway appeals the denial of their motion for a directed verdict. After careful consideration, we affirm the trial court's denial of plaintiff's Rule 59 motion and its denial of Callaway's summary judgment motion, but we reverse the trial court's ruling on Callaway's motion for directed verdict.

Plaintiff went to Callaway in order to receive a physical examination. Rivera-Ortiz was plaintiff's attending physician. At the time of her physical examination by Rivera-Ortiz, plaintiff was seeking the examination in order to obtain employment with Federal Express. After arriving at Callaway, plaintiff underwent a drug screening and was taken to a room to wait for Rivera-Ortiz. She was told to wait for the doctor's arrival, disrobe down to her underwear, and to put on a hospital gown. After several minutes, Rivera-Ortiz entered the room and introduced himself as the physician who would be conducting her physical examination.

Both plaintiff and Rivera-Ortiz agree that sexual conduct occurred during and after the examination, but the parties disagree over who initiated the acts. Plaintiff testified that Rivera-Ortiz instigated the sexual encounter by asking questions about her marital status and then placing his finger in her vagina. Rivera-Ortiz, however, denied those allegations and said that it was plaintiff who commenced the sexual contact by grabbing his crotch, massaging his genitals, and unzipping his pants.

Plaintiff alleged that as a result of Rivera-Ortiz and Callaway's negligence, she suffered severe emotional distress. Plaintiff testified that she has undergone psychotherapy and group therapy as a result of the incident. Racquel Ward, one of plaintiff's counselors, and Dr. Nilima Shukla, plaintiff's psychiatrist, testified that plaintiff had experienced physical, mental, and sexual abuse in the past, and that many of the stressors present in plaintiff's life predated the alleged assault by Rivera-Ortiz.

---

2. Rivera-Ortiz and Callaway will be referred together as "defendants" where appropriate.

**HUGHES v. RIVERA-ORTIZ**

[187 N.C. App. 214 (2007)]

During deliberations, the jury expressed to the trial judge confusion over the definition of "negligence." The trial court re-read portions of Dr. Patrick Guiteras's testimony regarding the appropriate standard of care for medical doctors. Specifically, the trial court read the portions of the testimony where Dr. Guiteras stated that if Rivera-Ortiz's account of the interactions were true, that he did not violate the standard of care.

After the jury resumed deliberations, the trial judge assessed where the jury was in deliberations:

The problem is they just cannot agree. The note I've gotten says that ten of the twelve jurors feel they are deadlocked or hung, which is the word[s] they used. I don't think it is [a] question that they don't understand the law, but just that they can't agree on what the issue is.

After the foreperson indicated that he thought the jury was deadlocked, the trial court re-read the standard instruction on a juror's duty not to hesitate to reexamine his or her views. Only two jurors, by a show of hands, thought they could reach a unanimous verdict. Eight indicated that they thought the jury was deadlocked. The trial court asked the jury to return to deliberations.

After deliberating for approximately one and a half hours more, the jury found that Rivera-Ortiz was negligent and that Callaway had ratified his conduct. The jury awarded plaintiff one (1) dollar in damages. The trial court denied plaintiff's motion for a new trial.

Plaintiff presents the following issue for this Court's review: Whether the trial court abused its discretion in denying plaintiff's motion for a new trial. Callaway presents one additional issue for this Court's review: Whether the trial court erred in denying their motion for directed verdict on the issue of ratification. We address each issue in turn.

I.

The trial court's discretionary ruling under Rule 59 in either granting or denying a motion for a new trial may be reversed on appeal " 'only in those exceptional cases where an abuse of discretion is clearly shown.' " *Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (citation omitted). Appellate review of the order "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482, 290

S.E.2d 599, 602 (1982). " 'If the award of damages to the plaintiff is "grossly inadequate," so as to indicate that the jury was actuated by bias or prejudice, or that the verdict was a compromise, the court must set aside the verdict in its entirety and award a new trial on all issues.' " *Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 195-96 (1974) (quoting 58 Am. Jur. 2d, New Trial, § 27 (1971)). The party seeking to establish the abuse of discretion, in this case the plaintiff, bears that burden. *Worthington*, 305 N.C. at 484-85, 290 S.E.2d at 604.

**[1]** Plaintiff argues that the trial court erred in denying her motion for a new trial on the ground that the jury verdict was a result of a compromise. We disagree.

Plaintiff relies upon our Supreme Court's decision in *Robertson* to argue that she is entitled to a new trial. In that case, the plaintiff and his father brought suit to recover damages for injuries suffered when the plaintiff was struck by the defendant's vehicle. *Robertson*, 285 N.C. at 564, 206 S.E.2d at 192. The jury found that the plaintiff and his father were damaged by the negligence of the defendant, and that neither was contributorily negligent. *Id.* at 566, 206 S.E.2d at 193. The jury awarded damages to the father for medical expenses incurred. *Id.* at 564, 206 S.E.2d at 192. The jury in *Robertson*, despite plaintiff's uncontroverted evidence of permanent scarring and pain and suffering, awarded the plaintiff nothing on his claim for these damages. *Id.* at 566, 206 S.E.2d at 193. Pursuant to Rule 59, plaintiff moved for a new trial. The trial court denied the motion and entered judgment on the verdict from which plaintiff appealed. On appeal, the Supreme Court stated:

> Under such circumstances, with the evidence of pain and suffering *clear, convincing and uncontradicted*, it is quite apparent that the verdict is not only inconsistent but also that it was not rendered in accordance with the law. Such verdict indicates that the jury arbitrarily ignored plaintiff's proof of pain and suffering. If the minor plaintiff was entitled to a verdict against defendant by reason of personal injuries suffered as a result of defendant's negligence, then he was entitled to all damages that the law provides in such case.

*Id.* at 566, 206 S.E.2d at 193-94 (emphasis added and original emphasis omitted). Thus, the issue before this Court is whether the evidence of pain and suffering was clear, convincing, and uncontradicted. The dissent, however, would conclude that plaintiff has "proved by the

## HUGHES v. RIVERA-ORTIZ

[187 N.C. App. 214 (2007)]

'greater weight of the evidence' that she suffered actual damages" and would therefore grant plaintiff a new trial. Such is not the standard in reviewing a trial court's denial of a Rule 59 motion. Instead, in order to find an abuse of discretion in this context, the evidence as to damages must be *clear, convincing and uncontradicted. Id.* Moreover, "an appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Worthington,* 305 N.C. at 487, 290 S.E.2d at 605; *see also Setzer v. Dunlap,* 23 N.C. App. 362, 363, 208 S.E.2d 710, 711 (1974) (a trial judge's discretionary order will not be overruled except " 'in extreme circumstances, not at all likely to arise; and it is therefore practically unlimited' ") (citations omitted). Such is not the case here.

As to whether the evidence was uncontradicted, plaintiff argues that because defendants put forth no evidence at trial, it is uncontradicted as a matter of law. The *Robertson* Court found the evidence to be uncontradicted because the defendant in that case offered no evidence. *Id.* at 564, 206 S.E.2d at 193. In this case, however, in light of the fact that Rivera-Ortiz was called to testify by plaintiff and was examined at length by counsel for defendants, it could not be said that the evidence was uncontradicted.[3] Moreover, some of the evidence presented by plaintiff was contradictory and in part unfavorable to her position with regards to damages.

Plaintiff alleged that she suffered emotional distress as a result of an alleged assault by Rivera-Ortiz that rendered her unable to work. Plaintiff testified at trial that after the assault, she was unable to care for her children or work. However, plaintiff's own counselor testified that she had encouraged plaintiff to find work as early as late 2003. Jenny Kirwin, a clinical social worker who counseled plaintiff, testified that one of her main focuses during her treatment of plaintiff in late 2003 and early 2004 was getting her back to work. In fact, obtaining employment came up in all of Kirwin's sessions with plaintiff, and plaintiff herself agreed that she needed to get back to work. By the time of the trial, however, plaintiff had not yet gone back to work.

---

3. It is without question that the issue of negligence was bitterly disputed. Rivera-Ortiz denied that he instigated any sexual contact and claimed that plaintiff was the aggressor. Plaintiff, on the other hand, testified that Rivera-Ortiz initiated sexual contact and that she ended the situation. That, however, goes to negligence, and the jury has already found Rivera-Ortiz negligent. Accordingly, we do not consider that evidence to determine whether the evidence presented by plaintiff as to her pain and suffering was clear, convincing, and uncontroverted such that she would be entitled to a new trial.

Plaintiff also testified that all of her symptoms of emotional distress began after the alleged assault by Rivera-Ortiz. Dr. Shukla, a psychiatrist who saw plaintiff following the incident at Callaway, testified that she rarely brought up the incident after the first visit. Dr. Shukla testified that if the "symptoms started following that trauma, then you would expect that person to be talking about it and usually making some connections." The jury also heard testimony from Dr. Shukla that plaintiff had only discussed the assault in three of her first seventeen visits, but after this was brought to her attention, she discussed the assault in every subsequent visit with Dr. Shukla.

Moreover, Dr. Shukla and Racquel Ward, a clinician who counseled plaintiff, both acknowledged that plaintiff's alleged emotional and psychological problems could be attributed to events in her life that predated the alleged assault by Rivera-Ortiz. Plaintiff testified that she had been the victim of domestic violence for many years by Jasper Mackey ("Mackey"), the father of three of her children. She also testified that she witnessed Mackey murder his father while she was standing ten to twelve feet away. Dr. Shukla testified that plaintiff told her that she had been abused physically, mentally, and sexually in the past. Dr. Shukla stated that plaintiff's post-traumatic stress disorder could have been caused by these past events.

Clearly, this testimony reveals that the evidence was very much in conflict as to what, if any, damages plaintiff was entitled to from the negligent actions of Rivera-Ortiz. Where the evidence of damages is conflicting, the jury is "free to believe or disbelieve plaintiff's evidence." *McFarland v. Cromer*, 117 N.C. App. 678, 682, 453 S.E.2d 527, 529 (1995) (citing *Smith v. Beasley*, 298 N.C. 798, 801, 259 S.E.2d 907, 909 (1979)). Accordingly, we find that the trial court did not abuse its discretion in denying plaintiff's Rule 59 motion for a new trial.

II.

[2] Callaway argues that plaintiff failed to submit any admissible evidence at summary judgment to prove misconduct by Rivera-Ortiz or to establish vicarious liability by Callaway. The denial of a motion for summary judgment, however, is not reviewable on appeal from a final judgment on the merits. *Chaney v. Young*, 122 N.C. App. 260, 262, 468 S.E.2d 837, 838 (1996) (citing *Duke University v. Stainback*, 84 N.C. App. 75, 77, 351 S.E.2d 806, 807, *affirmed*, 320 N.C. 337, 357 S.E.2d 690 (1987)).

The rationale for nonreviewability after a trial on the merits is that the purpose of these preliminary motions—to bring litigation

to an early decision on the merits when no material facts are in dispute—can no longer be served after there has been a trial. To grant review of these denials "would allow a verdict reached after a presentation of all the evidence to be overcome by a limited forecast of the evidence."

*Stainback,* 84 N.C. App. at 77, 351 S.E.2d at 807 (quoting *Harris v. Walden,* 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985)). Callaway's cross-assignments of error as to this issue are therefore dismissed.

III.

[3] We review the denial of a motion for a directed verdict to determine

"whether the evidence, *taken in the light most favorable to the non-moving party,* is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict . . . *the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury.*"

*Arndt v. First Union Nat'l Bank,* 170 N.C. App. 518, 522, 613 S.E.2d 274, 277-78 (2005) (quoting *Davis v. Dennis Lilly Co.,* 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991)). In the instant case, Callaway argues that the trial court erred in denying their motion for directed verdict on the issue of whether they ratified Rivera-Ortiz's conduct. We agree.

At the outset, we note that plaintiff makes no argument as to the issue of ratification before this Court. Indeed, plaintiff concedes that the actions of Rivera-Ortiz were not ratified but instead argues that "the undisputed fact[s establish] that [Rivera-Ortiz's acts were] committed 'during the execution of the employee's duties.' " Employers, under certain circumstances, may be held liable for acts of employees when they are committed within the course of employment. *See B. B. Walker Co. v. Burns International Security Services,* 108 N.C. App. 562, 565, 424 S.E.2d 172, 174, *disc. review denied,* 333 N.C. 536, 429 S.E.2d 552 (1993) (liability under *respondeat superior* may arise when an employer: (1) expressly authorizes the act; (2) the act was committed within the scope of employment; or (3) the employer ratified the act). In this case, even if Rivera-Ortiz was acting within the scope of his employment, the trial court granted Callaway's motion for directed verdict on the issue of *respondeat superior,* and plaintiff

did not assign error to that ruling. Accordingly, plaintiff has waived review of this issue. N.C.R. App. P. 10(a) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal").

Liability may be imposed on employers when they ratify the negligent acts of an employee. *B. B. Walker*, 108 N.C. App. at 565, 424 S.E.2d at 174.

> In order to show that the wrongful act of an employee has been ratified by his employer, it must be shown that the employer had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, shows an intention to ratify the act.

*Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 492, 340 S.E.2d 116, 122 (1986) (citing *Equipment Co. v. Anders*, 265 N.C. 393, 144 S.E.2d 252 (1965)). A plaintiff may still establish ratification if the employer "had 'knowledge of facts which would lead a person of ordinary prudence to investigate further.' " *Guthrie v. Conroy*, 152 N.C. App. 15, 27, 567 S.E.2d 403, 412 (2002) (quoting *Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 415, 473 S.E.2d 38, 42 (1996)).

In *Hogan*, this Court held that where there is evidence that an employer has been informed that an employee has been sexually harassing others in the work place; there is sufficient evidence to submit the issue of ratification to the jury. *Hogan*, 79 N.C. App. at 492-93, 340 S.E.2d at 122; *see also Conroy*, 152 N.C. App. at 27, 567 S.E.2d at 412 (finding ratification where the victim-employee reported at least six incidents of harassing behavior and her employer did nothing). Under *Hogan*, evidence is sufficient to submit the question of ratification to the jury where the defendant: (1) retained the negligent actor in the defendant's employ; (2) declined to intervene upon notification that sexual harassment had occurred; and (3) ultimately fired the complaining party. *Hogan*, 79 N.C. App. at 493, 340 S.E.2d at 122. We do not find such circumstances here.

In this case, the only factor on which plaintiff presented evidence under *Hogan* was that Rivera-Ortiz was still in the employ of Callaway. This, standing alone, cannot be sufficient to find a ratification. Were we to hold otherwise, employers would be forced to choose between terminating every employee against whom a complaint is filed when the alleged negligent act occurred even arguably within the course of the employee's work or to risk ratifying the

employee's conduct. Moreover, there is no indication that Callaway "had knowledge of all material facts and circumstances relative to the wrongful act[.]" *Hogan*, 79 N.C. App. at 492, 340 S.E.2d at 122.

As to Callaway's knowledge, plaintiff's attorney asked Rivera-Ortiz whether he told any of his co-workers on 12 September 2002 about what happened between plaintiff and him. Rivera-Ortiz responded that, "[n]o. I did not discuss what happened with her." Plaintiff's counsel also asked if Rivera-Ortiz had told Dr. Callaway, Rivera-Ortiz's supervisor, about the incident between plaintiff and him. Rivera-Otiz responded that he did not tell Dr. Callaway or anyone else anything until 27 September 2002, when the police began an investigation of Rivera-Ortiz. Even then, he provided Callaway with no details of the incident. It was only in November 2004, during a deposition, that Rivera-Ortiz provided his version of the events in front of Callaway's counsel. Thus, Callaway had no notice of any material facts before November 2004.

In September 2002, Dr. Callaway told Rivera-Ortiz that he had serious concerns as to the police investigation and as to the medical board complaint. Rivera-Ortiz responded that he " 'did nothing wrong.' " Dr. Callaway told Rivera-Ortiz that he believed him " 'but this [matter] has to be cleared for you to continue working.' " Rivera-Ortiz was suspended from employment pending the conclusion of the investigation and did not work for the rest of 2002.

Rivera-Ortiz denied to the police and the medical board that any sexual contact occurred between him and plaintiff. Plaintiff, however, argues that Callaway became aware of Rivera-Ortiz's conduct when he gave a deposition in November 2004 and that because they took no disciplinary action they ratified his conduct. As we have already stated: Rivera-Ortiz was suspended for the remainder of the 2002 calendar year. To say that Callaway failed to intervene is an untenable argument.

Plaintiff would have this Court hold that an employer is capable of ratifying conduct based on testimony given during a deposition, occurring two years after an incident that the employee had previously disputed, by not then firing the employee. We are unwilling to enlarge the concept of ratification to such an extent. This is especially true here, where plaintiff's expert witness testified that if Rivera-Ortiz's account of the incident were true, he would not have violated the standard of care. Accordingly, we find that the trial court erred in denying Callaway's motion for directed verdict on the issue

of ratification and therefore remand with instructions to vacate the judgment against Callaway.

### IV.

In summary, we hold that the trial court did not err in denying plaintiff's motion for a new trial. We also hold that Callaway's motion for a directed verdict should have been granted and remand with instructions to vacate the judgment as to Callaway.

Affirmed in part; reversed and remanded in part.

Judge BRYANT concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge, dissenting.

I concur with that portion of the majority opinion that reverses the trial court's denial of Callaway's motion for directed verdict and remands with instructions to vacate the judgment against Callaway. However, because I find that the jury's finding of Dr. Rivera-Ortiz as negligent is inconsistent with their award of only one dollar in nominal damages to Ms. Hughes, I would likewise reverse the trial court's denial of Ms. Hughes's Rule 59 motion for a new trial. I therefore respectfully dissent in part.

As noted by the majority, the question of Dr. Rivera-Ortiz's negligence is not before us on appeal; the jury returned a verdict finding him negligent, and that verdict remains undisturbed. Our sole question is to determine whether Ms. Hughes is entitled to a new trial under North Carolina Rule of Civil Procedure 59(a)(6), which allows a new trial to be granted on the grounds of "[m]anifest disregard by the jury of the instructions of the court" or "[e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice." N.C. Gen. Stat. § 1A-1, Rule 59(a)(5), (6) (2005). Thus, the only facts relevant to our inquiry are those that pertain to Ms. Hughes's alleged damages as a result of Dr. Rivera-Ortiz's negligence, as found by the jury.

Our state Supreme Court has indicated that a court "must set aside [a] verdict in its entirety and award a new trial on all issues" when an award of damages to a plaintiff is "grossly inadequate, so as to indicate that the jury was actuated by bias or prejudice, or ·

that the verdict was a compromise[.]" *Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 195-96 (1974) (quotation and citation omitted). Moreover:

> Under such circumstances, with the evidence of pain and suffering clear, convincing and uncontradicted, it is quite apparent that the verdict is not only inconsistent but also that it was *not rendered in accordance with the law*. Such verdict indicates that the jury arbitrarily ignored plaintiff's proof of pain and suffering. If the . . . plaintiff was entitled to a verdict against defendant by reason of personal injuries suffered as a result of defendant's negligence, then he was entitled to *all* damages that the law provides in such case.

*Id.* at 566, 206 S.E.2d at 193-94 (emphasis in original).

When instructing the jury in the instant case, the trial court informed them that, if they found that Dr. Rivera-Ortiz had injured Ms. Hughes through his negligence, Ms. Hughes was "entitled to recover nominal damages even without proof of actual damages[]" and would also be entitled to actual damages if she "prove[d] by the greater weight of the evidence the amount of actual damages proximately caused by the negligence" of Dr. Rivera-Ortiz. These instructions were a correct statement of the law; after a careful review of the record and transcript before us, I conclude that the jury's award of only one dollar in nominal damages to Ms. Hughes was rendered contrary to the trial court's instructions and the law.

In its judgment, the jury responded, "Yes," to the question, "Was the plaintiff Blondale Hughes injured by the negligence of the defendant Dr. Epifanio Rivera-Ortiz?" This verdict indicates that the jury believed Ms. Hughes's version of the events of 12 September 2002, rather than the story told by Dr. Rivera-Ortiz. As recounted by Ms. Hughes at trial, Dr. Rivera-Ortiz began her physical examination by checking her eyes, ears, mouth, and breathing, and discussed the veins on her leg. Dr. Rivera-Ortiz then asked Ms. Hughes where her husband was; she answered that she was not married and that her children's father was in prison. He responded, "Well, where do you get sex from?" and she answered, "I don't get sex." Dr. Rivera-Ortiz replied, "Wouldn't you like for somebody to come and give you sex and then leave?" and Ms. Hughes told him, "No, why would I want that. I want somebody who is going to be with me and take care of me. Why would I just want somebody to give me sex."

Ms. Hughes testified that at that point, Dr. Rivera-Ortiz asked her to bend down, and she then "felt his finger inside of [her] and he said, 'Ohhh.' " She went on to state:

> By then I pushed myself up. He didn't move his finger and I vaguely moved it for him when I pulled my body up from him. When I pulled my body up from him, I turned around and first I looked and his thing was just dangling right out of his pants. He grabbed me and pushed me back toward him and rubbed it in the middle of my hip. And then I said, "Please stop." I said, "Stop. Don't do that." I said, "Stop." So, by then he finally stopped. He stopped and then that is when he grabbed his note pad and said, "Write your number down and we can finish this."

Ms. Hughes wrote her number on the pad "because [she] didn't care because [she] wanted him out of there." She then got dressed and left the clinic, passing Dr. Rivera-Ortiz on her way out, when "he looked at me and smiled it was like he didn't care what [she was] [sic] going to do about what he did. He didn't have no remorse about what he did."

Ms. Hughes also told the jury that she had never seen a psychologist or psychiatrist prior to the 12 September 2002 incident with Dr. Rivera-Ortiz, yet had undergone extensive counseling since that time. Two of her counselors testified to the treatment she received, including several medications. Evidence was offered that Ms. Hughes was physically fit prior to the incident and actively seeking employment; indeed, her reason for the visit to Dr. Rivera-Ortiz was to have a physical for a job for which she was applying. Although Ms. Hughes also discussed her prior criminal convictions and exposure to domestic violence with her children's father, those events took place more than five years prior to the September 2002 incident. Ms. Hughes testified to her inability to get a job that required a physical because of her fear of visiting a doctor, as well as panic attacks, her inability to care for her children, and her medical expenses.

Given that the jury found Ms. Hughes's evidence persuasive on the question of negligence, and that Dr. Rivera-Ortiz put on no evidence of his own at trial, I find that Ms. Hughes proved by the "greater weight of the evidence" that she suffered actual damages due to Dr. Rivera-Ortiz's negligence, including medical expenses related to her counseling and medication, and lost wages. As such, the jury acted contrary to the trial court's instructions in awarding Ms. Hughes only one dollar in nominal damages. Although the *Robinson* court noted

the presence of "clear, convincing and uncontradicted" evidence as to pain and suffering *in that case,* I do not believe that language is a controlling precedent as to the standard to be applied in ruling on a Rule 59 motion. Thus, I conclude that the trial court abused its discretion by denying Ms. Hughes's Rule 59 motion for a partial new trial on damages. I would therefore reverse.