Tumlin v. Tuggle Duggins P.A., 2018 NCBC 49.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

WAYNE E. TUMLIN,

Plaintiff,

v.

TUGGLE DUGGINS P.A.,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 9887

**ORDER & OPINION DENYING
PLAINTIFF'S MOTION FOR
DISCOVERY SANCTIONS**

1. THIS MATTER is before the Court on Plaintiff's Motion for Discovery Sanctions ("Motion") asserting that Defendant has violated Rule 26(g) and Rule 37(b)(2) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons discussed below, the Court DENIES the Motion.

*Nelson Mullins Riley & Scarborough, LLP, by G. Gray Wilson and Lorin J. Lapidus, for Plaintiff.*

*Sharpless & Stavola, P.A., by Frederick K. Sharpless, for Defendant.*

Gale, Chief Judge.

## I.    INTRODUCTION

2. The central issue in the case is whether Plaintiff Wayne E. Tumlin ("Plaintiff" or "Tumlin") is entitled to additional compensation after his resignation from Defendant Tuggle Duggins P.A. ("Defendant" or "Tuggle Duggins") or whether he forfeited such right by failing to give timely notice of his resignation.

3. The Motion is the culmination of disputes regarding document production that have now extended over two years, during which time the Court has held numerous conferences and issued various orders. In addition to monetary

sanctions, Tumlin now asks the Court to order a forensic examination of Tuggle Duggins' e-mail server, at the firm's expense, to determine if potentially relevant e-mails were lost because of Tuggle Duggins' failure to adequately preserve documents. Tumlin further contends that Tuggle Duggins' counsel, when signing discovery responses, improperly certified that reasonable efforts had been taken to assure that all relevant information had been produced.

4. For the reasons discussed below, the Court concludes that Tuggle Duggins did not violate Rule 26(g) or Rule 37, Tuggle Duggins' counsel did not make an improper certification, no sanctions are warranted, and the discovery in this action is now complete.

## I. FACTUAL BACKGROUND

### A. Tumlin's Resignation

5. Tumlin began working as a partner at Tuggle Duggins, P.A. in May 2008. (Compl. ¶ 4, ECF No. 1; Am. Answer ¶ 4, ECF No. 33.)

6. On or around May 13, 2015, Tumlin informed Tuggle Duggins' President, Ross Hamilton, that he planned to resign. (Compl. ¶ 13; Am. Answer ¶ 13.) Mr. Hamilton asked Tumlin to consider working at the firm for at least one more year. (Compl. ¶ 17; Am. Answer ¶ 17.)

7. On May 19, 2015, Tumlin provided Mr. Hamilton with his resignation letter, which specified his last day as June 5, 2015. (Compl. ¶ 18; Am. Answer ¶ 18.) Tuggle Duggins contends that the Firm's Policies Governing Attorney's Compensation upon Termination of Employment requires at least thirty days' notice

to receive any post-termination compensation. (Am. Answer 10.) Tumlin contends that both he and Mr. Hamilton "mutually agreed" to his departure date, which Tuggle Duggins denies. (*See* Compl. ¶¶ 17–18; Am. Answer ¶¶ 17–18.) Tumlin resigned from the firm on June 5, 2015. (*See* Compl. ¶ 37.)

8.     Tuggle Duggins' fiscal year ended August 31, 2015. On September 19, 2015, Tumlin e-mailed Mr. Hamilton inquiring when he would receive payment for the collected fees allocated to him for the work he performed during the first ten months of the August 31, 2015 fiscal year. (Compl. ¶ 31; Am. Answer ¶ 31.) Mr. Hamilton responded that Tuggle Duggins did not owe Tumlin any additional compensation. (Compl. ¶ 32; Am. Answer ¶ 32.) Mr. Hamilton directed Tumlin to address any further questions concerning this issue to Tuggle Duggins' attorney, Frederick Sharpless. (Compl. ¶ 33; Am. Answer ¶ 33.) On September 22, 2015, Mr. Sharpless informed Tumlin that he was not entitled to any further compensation because he did not give proper notice regarding his departure, which is required to receive post-termination compensation. (Compl. ¶ 34; Am. Answer ¶ 34.) On October 9, 2015, Tumlin's attorney contacted Mr. Sharpless. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, ECF No. 60.1.)

9.     During this same time, Tuggle Duggins was preparing to install a new e-mail archiving system, and the firm's administrator, Elizabeth Osteen, encouraged employees to clean up e-mail mailboxes in preparation for the installation. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. E, at 1–2, ECF No. 60.5.) Mrs. Osteen e-mailed all Tuggle Duggins' employees, on the afternoon of October 16, 2015, asking

them to "delete as many emails as possible, especially emails with large attachments" to help improve the system's functionality. (Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. E, at 2.) On the morning of October 17, 2015, Nathan Duggins e-mailed all attorneys, staff, and CPAs at Tuggle Duggins and instructed them to "retain all emails related to Wayne Tumlin." (Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. E, at 1.)

10.     Tumlin initiated this action on November 30, 2015, asserting multiple claims tied to his allegation that Tuggle Duggins owes him additional compensation for the fiscal year ending on August 31, 2015. (*See* Compl. ¶¶ 41–65.) Tumlin contends that the firm's thirty-day notice provision is unenforceable because it violates public policy, that Tuggle Duggins waived the notice requirement when Mr. Hamilton agreed to Tumlin's last day, and that Tuggle Duggins fraudulently induced Tumlin to leave without providing thirty days' notice to avoid paying his end-of-fiscal-year compensation. (*See* Compl. ¶¶ 37–38, 59.) Stated differently, Tumlin argues that Tuggle Duggins' partners undertook efforts as early as May 2015 to cause Tumlin to forfeit his 2015 end-of-fiscal-year compensation. (*See* Compl. ¶ 59.)

B.     **Tuggle Duggins' E-mail System**

11.     Tuggle Duggins uses Outlook as its e-mail application. (Rains Dep. 8: 22–23, ECF No. 56.2.) Tuggle Duggins bought a new software, Symantec Enterprise Vault, for archiving its e-mails in October 2015. (Rains Dep. 8:24–9:3.)

12.     Tuggle Duggins installed the software on November 30, 2015. (Rains Dep. 9:8–10.) At installation, Tuggle Duggins archived all e-mails older than six

months into the new software.[1]  (Rains Dep. 9:11–17.)  E-mails dated May 31, 2015 through November 30, 2015 were not included in the initial archive.  (*See* Rains Dep. 9:11–15, 18:4–25.)  Thereafter, the system was set up to automatically archive e-mails in employees' inboxes, outboxes, and deleted folders once they become six months old.  (*See* Rains Dep. 18:4–25; 30:9–13.)

13.  Until it is archived, an e-mail is stored in the sender's or recipient's mailbox and the sender or recipient can delete the e-mail from his inbox or outbox, which moves that e-mail to the deleted folder.  A sender or recipient can then delete the e-mail from the deleted folder, essentially double-deleting the e-mail and removing it from the server.  If an e-mail is double-deleted by the user before it is archived, then Tuggle Duggins cannot archive the e-mail because it has been permanently deleted from the server.  (Rains Dep. 10:21–11:14.)  If more than one Tuggle Duggins' employee is a sender or recipient of an e-mail, to delete all copies of the e-mail each user who possessed the e-mail would have to double-delete it prior to its being archived.  No users have the ability to delete e-mails once they are archived.  (Rains Dep. 10:17–20.)

## II.    THE COURSE OF WRITTEN DISCOVERY

14.  Tumlin served his initial discovery requests on January 7, 2016.  The Court extended Tuggle Duggins' time to respond to such discovery until after Tumlin was deposed on May 11, 2016.

---

[1] One employee's e-mails were not archived at that time, but the delay in Mr. Wenig's e-mails being archived does not appear to be relevant to this matter.  (*See* Rains Dep. 9:18–23.)

15.     The Court held a case management conference on March 21, 2016, and entered the Case Management Order ("CMO"), which adopted the parties' Joint Case Management Plan.  (Case Management Order ("CMO"), ECF No. 16.)  The CMO requires both parties to "maintain all reasonably accessible evidence related to the issues in this case" and to make a "reasonable effort to preserve or archive" e-mails related to this action.  (Joint Case Management Plan ¶ 11, ECF No. 9.)  The parties agreed that "once a party has made a diligent and reasonable search for electronic records and has made a diligent and reasonable effort to preserve or archive same, the parties shall be under no obligation to suspend ordinary operations of their network, replacement of media, or replacement of components or equipment."  (Joint Case Management Plan ¶ 11.)

16.     The central document request at issue in this Motion seeks the production of "emails . . . in [Tuggle Duggins'] possession or control . . . regarding or pertaining to plaintiff's departure from the defendant and/or relating to plaintiff's compensation for any period after August 31, 2014."  (Pl.'s Br. Supp. Mot. Disc. Sanctions Ex. E ("Def.'s Resp. Pl.'s Req. Produc. Docs."), Req. Product. 5, ECF No. 56.6.)

17.     In its discovery response signed by counsel on June 29, 2016, Tuggle Duggins objected to that request as overbroad, but stated that it would produce "all communications with plaintiff concerning his employment with defendant, his resignation, [and] any compensation (not) due following his departure."  (Def.'s Resp. Pl.'s Req. Produc. Docs., Req. Product. 4.)  During the course of the proceedings,

Tuggle Duggins searched its e-mail server numerous times and made multiple productions as summarized below.

18.     On July 20, 2016, Tuggle Duggins' IT manager, Tim Rains, searched Tuggle Duggins' directors', Mrs. Osteen's, and CPA Kris Landrum's e-mail mailboxes using the search terms "Wayne" and "Tumlin" ("Search No. 1").  (Rains Dep. 13:15–14:6.)  In reviewing the results of that search, Mr. Rains realized that the software had not searched the subject line or body of e-mails, but only searched the "To" and "From" fields.  (Rains Dep. 14:7–19.)  Mr. Rains adjusted the software search parameters to include the subject line and body of e-mails and then conducted a second search of the directors' and Mrs. Osteen's mailboxes using the same search terms ("Search No. 2").  (Rains Dep. 14:16–15:7.)

19.     Search No. 1 and Search No. 2 produced approximately 6,000 e-mails.  (Rains Dep. 16:15–19.)  Mr. Rains reviewed those 6,000 e-mails and removed e-mails he determined "had no relationship to Mr. Tumlin's lawsuit."  (Rains Aff. ¶ 14, Jan. 12, 2017.)  Mr. Rains testified that he made such a determination "by looking at the sender and the sent to and the subject line and . . . see[ing] if [the e-mail] was in regards to any existing client work that was going on with the firm."  (Rains Dep. 21:11–14.)  In his affidavit, Mr. Rains explained that "the firm has a number [of] clients with the name 'Wayne'" and "the search captured e-mails about unrelated matters including e-mails from the ABA and/or CLEs with speakers with the name 'Wayne' and e-mails sent or received by Wayne to firm lawyers involving client-specific matters."  (Rains Aff. ¶ 14, Jan. 12, 2017.)

20.     Based on his review of the e-mails, he determined that 1,500 e-mails were not related to this action and provided the remaining 4,500 e-mails to Jeff Southerland, a partner at Tuggle Duggins, and Mrs. Osteen. (Rains Dep. 21:18–24.) Mr. Southerland then reviewed the e-mails for responsiveness, removed non-responsive e-mails, and produced the responsive e-mails to Mr. Sharpless. (*See* Rains Dep. 22:14–23:17.)

21.     On August 2, 2016, Tumlin moved to compel Tuggle Duggins to respond to his written discovery requests. (*See* Pl.'s Mot. Compel Disc., ECF No. 20.3.) Tuggle Duggins produced the responsive, non-privileged e-mails from Search No. 1 to Tumlin on August 19, 2016. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 1.)

22.     The Court held a hearing on Plaintiff's Motion to Compel on October 28, 2016. At the hearing, the Court directed Tumlin to provide a specific list of documents he contended had not been produced and directed Tuggle Duggins to provide documents listed on its privilege log to the Court for *in camera* review. After its *in camera* review, the Court concluded that Tuggle Duggins' assertion of privilege was justified and none of the documents withheld on the basis of privilege should be produced.

23.     On or around October 28, 2016, Mr. Rains searched Tumlin's former secretary's, Ms. Donna Compton's, e-mail mailboxes for the period between May 19, 2015 through July 2016 ("Search No. 3"). (Rains Dep. 29:1–30:1; 34:23–25.) Search No. 3 produced approximately 798 e-mails. (Rains Dep. 29:12–18.) Mr. Rains

followed the same process of removing e-mails that were not related to this action and providing the remaining e-mails to Mr. Southerland. (*See* Rains Dep. 32:6–15.)

24. Tuggle Duggins produced responsive, non-privileged e-mails from Search No. 2 and Search No. 3 to Tumlin on November 8, 2016. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 2.)

25. Mr. Rains then conducted the same search of Ms. Kathy Nichols', another firm administrator's, e-mails. (Rains Dep. 29:19–22.) Mr. Rains followed the same process of removing e-mails that were not related to this action and providing the remaining e-mails to Mr. Southerland. (Rains Dep. 32:6–15.) Tuggle Duggins supplemented its production of Search No. 3 and produced the responsive, non-privileged e-mails from Ms. Nichols' and Ms. Landrum's mailboxes to Tumlin on November 16, 2016. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 2.)

26. On November 22, 2016, Plaintiff provided a list of documents he contended still needed to be produced, and Tuggle Duggins responded on December 1, 2016. The Court held a telephone conference on this issue on January 5, 2017.

27. The Court ordered that the discovery period would be held in abeyance until the issues regarding Plaintiff's Motion to Compel were resolved. (*See* Order Regarding Disc. Deadlines, ECF No. 45.) After the conference, Tuggle Duggins provided Tumlin with Mr. Rains' affidavit, which specified all the searches Tuggle Duggins had performed on its e-mail server as of January 12, 2017. (*See* E-mail from Gray Wilson, Plaintiff's Counsel, to the Court and Defendant's Counsel (Jan. 19, 2017).)

28.     Tumlin did not identify any additional search terms he believed should have been included in the searches, but he continued to assert that the searches were insufficient.  (*See* E-mail from Gray Wilson, Plaintiff's Counsel, to the Court and Defendant's Counsel (Jan. 19, 2017); Tumlin Aff. ¶ 2.)  Tumlin complained that Mr. Rains' searches did not account for the fact "that many attorneys routinely set their Outlook to automatically and permanently delete items that reside in their 'deleted' folder when Outlook is closed," meaning such e-mails would not be archived and therefore not captured by the search.  (Tumlin Aff. ¶ 2.)

29.     The Court then held a further telephone conference on February 1, 2017, and deferred ruling on Plaintiff's Motion to Compel while the parties attempted to resolve outstanding issues.  After this conference, Tuggle Duggins searched all of its employees' mailboxes, other than those previously searched, using the search terms "Wayne" and "Tumlin" and the same time period used in prior searches ("Search No. 4").  (Rains Dep. 35:11–15.)  Mr. Rains performed Search No. 4 around or after March 22, 2017.  Mr. Rains reviewed the e-mails resulting from Search No. 4 and removed any e-mails he determined did not relate to this action.  (Rains Dep. 36:14–20.)  Tuggle Duggins provided the results from Search No. 4 to Tumlin on April 10, 2017.  (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 2.)

30.     Tumlin notified the Court that he did not believe that Search No. 4 satisfied the pending Motion to Compel and requested that the Court rule on the motion.  Around this time, Tumlin, for the first time, suggested two additional search terms that he believed should be used.  On April 17, 2017, the Court asked Tumlin to

provide a proposed order specifying what discovery he believed Tuggle Duggins still needed to produce. Tumlin provided a proposed order to the Court on June 12, 2017, to which Tuggle Duggins responded.

31. The Court entered an Order on Plaintiff's Motion to Compel Discovery on June 27, 2017. (*See* Order Pl.'s Mot. Compel Disc., ECF No. 46.) The order required that Tuggle Duggins search employees' or owners' inboxes, outboxes, sent items, and deleted items that had not previously been searched ("June 2017 Order"). (Order Pl.'s Mot. Compel Disc. ¶ 3(a).) The time parameter was from May 19, 2015 through July 1, 2016. (Order Pl.'s Mot. Compel Disc. ¶ 3(b).) The search terms were "Wayne," "Tumlin," "W.T.", and "W.E.T." (Order Pl.'s Mot. Compel Disc. ¶ 3.) The order specified that the search was limited to employees' or owners' mailboxes that were not included in prior searches and that Tuggle Duggins was not required to produce e-mails "unrelated to Plaintiff's departure or the calculation of any compensation that is or may be due to him if he prevails in this action," or "identified in a supplemental privilege log." (Order Pl.'s Mot. Compel Disc. ¶ 2(a)–(b); *see* Order Pl.'s Mot. Compel Disc. ¶ 3(a).)

32. Mr. Rains then conducted a search of all employees' mailboxes, excluding the directors, using the search terms "W.E.T." and "W.T." ("Search No. 5"). (Rains Dep. 63:6–7; *see also* Rains Dep. 37:16–39:24.) Mr. Rains followed the same process of removing e-mails that were not related to this action. (Rains Dep. 38:12–16.) Mr. Rains provided those e-mails to Mr. Southerland, who directed him to immediately export the e-mails to Mr. Sharpless. (Rains Dep. 39:1–11.)

33.     On July 11, 2017, Mr. Sharpless produced the results from Search No. 5 to Tumlin.   (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 2.)

34.     After that production was made, the Court held telephone conferences with the parties to resolve remaining discovery disputes.  On September 13, 2017, the Court ordered that Tuggle Duggins conduct a search of all e-mails previously searched using the search terms "W.E.T." and "W.T." ("September 2017 Order"). (Order on Disc. ¶ 1, ECF No. 52.)  Mr. Rains then conducted this search and sent the results directly to Mr. Sharpless.  (*See* Rains Dep. 40:8–21, 41:2–12.)  Based on that search, Tuggle Duggins produced a sixth batch of e-mails to Tumlin on October 12, 2017.  (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A, at 3.)

35.     Plaintiff filed this Motion on January 5, 2018.  (ECF No. 55.)  Tuggle Duggins moved for summary judgment on January 25, 2018.  (ECF No. 57.)

36.     The Court held a hearing on this Motion on February 8, 2018.

37.     On February 12, 2018, the Court suspended Plaintiff's summary judgment response deadline until further order from the Court.  (*See* Order Mot. Continue Summ. J. Resp. Deadline, ECF No. 65.)

38.     The Motion is now ripe for disposition.

### III.    ANALYSIS

39.     Plaintiff's Motion asserts four separate contentions: (1) that both Tuggle Duggins and Mr. Sharpless violated Rule 26(g); (2) that Tuggle Duggins failed to conduct reasonable searches and effectively manage e-discovery; (3) that Tuggle

Duggins failed to provide Plaintiff with all responsive e-mails; and (4) that Tuggle Duggins did not take reasonable steps to preserve electronic records.

## A.    Rules Governing The Scope of Discovery

40.    Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2015). Information is discoverable regardless of its admissibility at trial as long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the Court may limit discovery if it determines that the discovery is "unduly burdensome or expensive." *Id.* at Rule 26(b)(1a). In making such an assessment, the Court considers "the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." *Id.* Additionally, "[d]iscovery of electronically stored information is subject to limitations set forth in Rule 34(b)." *Id.* at Rule 26(1b).

41.    Pursuant to Rule 34(b), "a responding party should produce requested electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the limitations that apply to all discovery." *Id.* at Rule 34(b), cmt. (2011).

42.    If a party who received electronic discovery contends that he needs to

> have access to the full database or system that generated the information, the question of further production or direct access will turn on whether *the requesting party* can show that there is some specific reason, *beyond general suspicion* to doubt the information and that the burden of providing direct access is reasonable in light of the importance of the information and the circumstances of the case.

*Id.* (emphasis added).

43.     "When faced with responding to a request for the production of documents, counsel are required to direct the conduct of a thorough search for responsive documents with due diligence and ensure all responsive documents under the 'custody or control' of the client, unless protected from discovery, are produced." *Bd. of Regents v. BASF, Corp.*, No. 4:04CV3356, 2007 U.S. Dist. LEXIS 82492, at *16 (D. Neb. Nov. 5, 2007) (quoting Fed. R. Civ. P. 34).

## B.     Neither Tuggle Duggins Nor Its Counsel Violated Rule 26(g).

44.     Rule 26(g) requires that "[e]very request for discovery or response or objection thereto made by a party represented by an attorney shall be signed by at least one attorney of record in that attorney's name." N.C. Gen. Stat. 1A-1, Rule 26(g) (2015).  The rule provides that:

> the signature of the attorney or party constitutes a certification that the attorney or party has read the request, response, or objection and that *to the best of the knowledge, information, and belief* of that attorney or party formed after a *reasonable inquiry* it is: (1) consistent with the rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation.

*Id.* (emphasis added).  "Rule 26(g) is intended to impose an affirmative duty on counsel to behave responsibly during discovery and to ensure that it is conducted in a way that is consistent with the spirit and purposes of the discovery rules." *Azalea Garden Bd. & Care, Inc. v. Vanhoy*, No. 06 CVS 0948, 2009 NCBC LEXIS 7, at *12–

13 (N.C. Super. Ct. Mar. 26, 2009) (quoting *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357–63 (D. Md. 2008)). Rule 26(g) requires that parties and attorneys make a reasonable inquiry before responding to written discovery. *See* N.C. Gen. Stat. § 1A-1, Rule 26(g). "An attorney is not required to certify the truthfulness of the client's response, but only that the attorney made a reasonable effort to ensure that the client provided all responsive documents and information." 6 James Wm. Moore, et. al., *Moore's Federal Practice: Civil* § 26.152[2] (3d. ed. 2014). The reasonableness of the inquiry "is determined as of the time of the signing rather than in hindsight." *Id.* at § 26.154[2](a).

45. Tumlin contends that Tuggle Duggins and its counsel violated Rule 26(g) because, in Defendant's Answers to Plaintiff's First Set of Interrogatories, Tuggle Duggins stated that it would provide "all non-privileged documents regarding plaintiff's initial employment, or his resignation and any communications or internal document discussing his resignation or post-termination compensation," (Pl.'s Br. Supp. Mot. Disc. Sanctions, Ex. D, Interrog. 5, ECF No. 56.5), and in Defendant's Responses to Plaintiff's Request for Production of Documents, it stated it would produce "all communications with plaintiff concerning his employment with defendant, his resignation, [and] any compensation (not) due following his departure," (Def.'s Resp. Pl.'s Req. Produc. Docs., Req. Produc. 4). (*See* Pl.'s Br. Supp. Mot. Disc. Sanctions 9–10.) Tumlin argues that those responses could not have been made after a reasonable inquiry because Tuggle Duggins could not certify that all responsive documents would be produced when it is possible that some responsive

documents were double-deleted and no longer exist. (*See* Pl.'s Br. Supp. Mot. Disc. Sanctions 10–11.)

46. The Court finds Tumlin's argument unavailing. The North Carolina Rules of Civil Procedure require a party to produce electronically stored information that is reasonably accessible. *See* N.C. Gen. Stat. § 1A-1, Rule 34(b), cmt. (2011). Tuggle Duggins conducted multiple searches to locate all reasonably accessible documents in its possession. While there is the theoretical possibility that a Tuggle Duggins' employee may have double-deleted a potentially relevant e-mail for which no other copy exists, the Court finds no basis to conclude that Tuggle Duggins' employees undertook efforts to delete all potentially relevant e-mails. Further, Tumlin has presented no factual basis to suggest that Mr. Sharpless or Tuggle Duggins signed the discovery responses with knowledge that a potentially relevant e-mail had been lost or that any responsive e-mails were actually deleted.

47. Additionally, Tumlin suggests that Mr. Sharpless improperly signed discovery responses "as to objections only." (Pl.'s Br. Supp. Mot. Discovery Sanctions, Ex. D, at 12.) The Court need not consider this argument, because if the Court were to find a Rule 26(g) violation, Mr. Sharpless' caveat would not limit the Court's authority to sanction either Tuggle Duggins or Mr. Sharpless. *See Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 109 (D. Mass. Aug. 2, 1996) (holding "that an attorney cannot evade [the] duty [to provide all responsive information] by claiming to sign the objections only, or by not signing the responses at all"); *United Mo. Bank, N.A. v. Bank of N.Y.*, 723 F. Supp. 408, 416 (W.D. Mo. Oct. 6, 1989) (concluding that

counsel's failure to "certify defendant's responses to plaintiff's interrogatories as required by Rule 26(g) . . . does not prevent the Court from imposing sanctions upon defendant"). But there is no evidence suggesting that Mr. Sharpless or Tuggle Duggins failed to conduct a reasonable inquiry before responding to Plaintiff's First Set of Interrogatories or Plaintiff's Request for Production of Documents. Nor is there any evidence that Tuggle Duggins made its responses for an improper purpose or to create unreasonable delay or expense. *See SCR-Tech LLC v. Evonik Energy Servs. LLC*, No. 08 CVS 16632, 2014 NCBC LEXIS 72, at *22 (N.C. Super. Ct. Dec. 31, 2014) ("Rule 26(g) does not compel a sanction for [a failure to conduct a full and reasonable inquiry] unless accompanied by one of the other requisite findings: interposing the response for an improper purpose or creating unreasonable delay or expense.").

48. In sum, the Court finds no basis to conclude that Mr. Sharpless or Tuggle Duggins violated Rule 26(g).

## C. **Tuggle Duggins Conducted Sufficient Searches.**

49. Tumlin contends that Tuggle Duggins carelessly managed e-discovery because it failed to give adequate instructions to Mr. Rains who performed the searches and conducted the initial review of the documents. Because of Tuggle Duggins' alleged mismanagement, Tumlin asks the Court to require a third-party forensic examination of Tuggle Duggins' e-mail server.

50. Even though he has not challenged the adequacy of the search terms used, Tumlin argues that Tuggle Duggins' searches are insufficient and responsive e-mails may be missing because Tuggle Duggins allowed its IT manager to cull e-mails

from the initial search before submitting the search results to counsel for review, thereby resulting in "unsupervised relevancy determinations." (Pl.'s Br. Supp. Mot Disc. Sanctions 5.) Mr. Rains testified that after conducting the searches he reviewed the e-mails and removed e-mails he determined "had no relationship to Mr. Tumlin's lawsuit." (Rains Aff. ¶ 14, Jan. 12, 2017.)

51.    The Court agrees that when a party instructs a non-lawyer to review documents and assess responsiveness, the party should provide clear, specific instructions to the person on how to make such a determination. To eliminate any uncertainty regarding the responsiveness of production, best practice is to have a written policy detailing the procedure followed to determine responsiveness. However, a party's failure to have written documentation of such an effort does not necessarily support a conclusion that the search was not adequate or that sanctions are warranted.

52.    Tuggle Duggins does not have a written record of the instructions provided to Mr. Rains on how to make relevancy determinations. However, Mr. Rains explained that he determined if e-mails had any relationship to this action "by looking at the sender and the sent to and the subject line . . . to see if it was in regards to any existing client work that was going on with the firm." (Rains Dep. 21:11–14.) In his affidavit, Mr. Rains stated that "the firm has a number [of] clients with the name 'Wayne'" and "the search captured e-mails about unrelated matters including e-mails from the ABA and/or CLEs with speakers with the name 'Wayne' and e-mails sent or received by Wayne to firm lawyers involving client-specific matters." (Rains Aff. ¶ 14,

Jan. 12, 2017.)  Mr. Rains' apparent focus was on eliminating e-mails that contained the name "Wayne" in reference to someone other than Tumlin or to remove Tumlin's e-mails that clearly related to client-specific matters.  (*See* Rains Aff. ¶ 14, Jan. 12, 2017.)  Further, Tuggle Duggins later conducted an additional search of all directors' mailboxes, using the search terms "W.T." and "W.E.T.", and sent the results of that search directly to Mr. Sharpless.  (*See* Rains Dep. 40:8–15.)

53.    In sum, the Court concludes that there is no basis to find that Tuggle Duggins' searches were not reasonable in scope or that potentially relevant documents were removed from the search productions as a result of Mr. Rains' culls.

**D.    Tuggle Duggins Has Not Purposely Withheld Responsive Documents.**

54.    Tumlin contends that Tuggle Duggins continued to withhold responsive e-mails even after the Court issued its June 2017 Order and its September 2017 Order.  Tumlin's argument is based on two specific e-mails he identified after reviewing the hundreds of e-mails Tuggle Duggins had already produced: (1) Mr. Southerland's reply to Mr. Duggins' e-mail inquiry dated May 29, 2015, about whether he should discuss Tumlin's departure with Alan Duncan, (*see* Pl.'s Br. Supp. Mot. Disc. Sanctions Ex. H, at 3, ECF No. 56.9), and (2) Mr. Southerland's May 31, 2015 reply to Mr. Duggins' inquiry about Mr. Southerland's conversation with Tumlin concerning a client's files, (*see* Pl.'s Br. Supp. Mot. Disc. Sanctions Ex. H, at 1; Pl.'s Br. Supp. Mot. Disc. Sanctions 12).  In each instance, Tuggle Duggins had already produced the earlier e-mails in the chain and immediately located and provided the missing e-mails to Tumlin.

55. After reviewing the results of Search No. 2, which are saved on a Personal Storage Table ("".pst"") file, Mr. Rains determined that the searches did not identify these two e-mails. (Rains Aff. ¶ 3, Jan. 25, 2018, ECF No. 60.7.) It is unclear why they were not identified, but, after reviewing the e-mails, the Court concludes that they are marginally relevant, at best, and do not support a finding that the six document searches already performed were insufficient.

56. In sum, the Court concludes that Tuggle Duggins has produced all responsive documents reasonably accessible through the search software, and that, based on the number of searches conducted and the documents produced compared to the purported value of any further production, no additional searches are warranted.

**E. The Court, In Its Discretion, Concludes That Sanctions Are Not Appropriate Because There Are No Facts To Suggest That Potentially Relevant Information Was Lost.**

57. Tumlin contends that Tuggle Duggins failed to take reasonable steps to preserve potentially relevant e-mails related to this action and seeks sanctions pursuant to Rule 37(b)(2) in the form of attorneys' fees and an order requiring a forensic examination of Tuggle Duggins' e-mail server.

58. "Rule 37 gives the trial court express authority . . . to sanction a party for abuse of the discovery process," including sanctions for violating orders pursuant to Rule 37(a), Rule 35, and Rule 26(f). *Cloer v. Smith*, 132 N.C. App. 569, 573, 512 S.E.2d 779, 781 (1999); *see* N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (2015). This Court has held that it also has the power to sanction a party for violating a Rule 26(c)

protective order pursuant to Rule 37(b)(2) because "the orderly and efficient progression of litigation demands that the trial court be empowered to police violations" of its orders during the course of discovery. *Out of the Box Developers, LLC v. LogicBit Corp.*, No. 10 CVS 8327, 2014 NCBC LEXIS 7, at \*7 (N.C. Super. Ct. Mar. 20, 2014). That same reasoning applies to the discovery directives in a Case Management Order. *See Baker v. Charlotte Motor Speedway, Inc.*, 180 N.C. App. 296, 300–01, 636 S.E.2d 829, 832–33 (2006) (affirming a trial court's Rule 37(b)(2) sanctions for failing to comply with the court's case management order).

59.     But the Court should only impose sanctions when there are sound reasons to support such sanctions. There must be some evidence that the party actually violated a discovery obligation. *See, e.g.*, *Gillespie v. Majestic Transp., Inc.*, No. 16 CVS 324, 2017 NCBC LEXIS 44, at \*11 (N.C. Super. Ct. May 12, 2017) (explaining that the defendant had been given "multiple opportunities to comply with [the court's] orders and produce requested discovery" but failed to do so); *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at \*13 (explaining that the plaintiff had filed exhibits and an affidavit clearly demonstrating that the defendant had made internet postings that violated the protective order).

60.     "The decision to impose sanctions under Rule 37 is within the sound discretion of the trial court." *Gillespie*, 2017 NCBC LEXIS 44, at \*10 (citing *Baker*, 180 N.C. App. at 299, 636 S.E.2d at 831–32). "[T]he party seeking Rule 37 sanctions need not show prejudice resulting from sanctionable conduct." *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at \*8. But whether the party suffered

prejudice can "influence [the] court's discretion in determining the appropriate sanction." *Id.*; *see also Batlle v. Sabates*, 198 N.C. App. 407, 421, 618 S.E.2d 788, 798 (2009) ("[T]he trial court could have appropriately considered the issue of prejudice in making a sanctions-related decision and appears to have done so.").

61.     Tumlin contends that the Court should sanction Tuggle Duggins because it violated the Court's CMO by failing to issue a timely litigation hold and take additional steps necessary to reasonably preserve evidence.  But Tuggle Duggins' litigation hold preceded the CMO.  Tuggle Duggins implemented its litigation hold on October 17, 2015—eight days after Tumlin's counsel contacted Mr. Sharpless, several weeks prior to Tumlin initiating this action, and several months before the Court issued its CMO, which incorporated the parties' agreement to preserve evidence.  Thus, Tuggle Duggins did not violate the CMO itself.

62.     While he does not make the argument expressly, Tumlin seems to also argue that sanctions are appropriate, even if a specific Court order was not violated, because Tuggle Duggins' failure to sufficiently preserve evidence violates its general discovery obligations.  The Court agrees that it can address general violations of discovery obligations because it "retains inherent authority to impose sanctions for discovery abuses beyond those enumerated in Rule 37." *Cloer*, 132 N.C. App. at 573, 512 S.E.2d at 782; *see also Orbit One Communs., Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–107 (2d Cir. 2002)) ("[A] court may impose discovery sanctions even

absent an order pursuant to 'its inherent power to manage its own affairs.'"). But the Court finds that it should not exercise that authority based on the facts of this case.

63. The North Carolina case law related to sanctions for failure to sufficiently preserve electronically stored information ("ESI") mainly addresses when a party requests an adverse inference instruction based on spoliation. To the extent such law does not conflict with binding North Carolina precedent, the Court finds the guidance provided in the Sedona Conference Principles, Rule 37(e) of the Federal Rules of Civil Procedure, and federal case law on this topic persuasive to guide its analysis.

64. When a party alleges that sanctions are appropriate because potentially relevant ESI has been lost or destroyed, the Court believes that it should make the following inquiries as directed by the Sedona Principles and followed by federal courts. First, the Court should determine whether the ESI in question should have been preserved in the anticipation or conduct of litigation; stated otherwise, was there a loss of ESI after the duty to preserve had arisen? The Sedona Conference, *The Sedona Conference Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 The Sedona Conference Journal, § 14 cmt. 14.b. (2018) ("Sedona Principles"); *see also Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 527–28, 613 S.E.2d 274, 281 (2005) (quoting *McLain v. Taco Bell Corp.*, 137 N.C. App. 179, 187, 527 S.E.2d 712, 718 (2000)) (explaining that a plaintiff alleging spoliation must show that "the 'spoliator was on notice of the claim or potential claim at the time of the destruction'" and that pertinent or

"potentially supportive" information existed and was destroyed). Second, if the Court finds there was a loss of ESI after the duty to preserve had arisen, it must determine whether the ESI was lost because a party failed to take reasonable steps to preserve it. Sedona Principles § 14, cmt. 14.b. Third, if a party's failure caused the loss of ESI, then the Court should assess whether the ESI can be restored or replaced through additional discovery. *Id.*

65. Even if the Court finds that there has been a loss of ESI that cannot be recovered due to a party's failure to take reasonable steps to preserve evidence after the duty to preserve arose, that does not automatically mean that the Court should issue sanctions or order remedial measures. Instead, the Court should inquire whether such failure caused prejudice to the requesting party or whether the opposing party intentionally destroyed pertinent evidence. *See id.*

66. Pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, if the court finds that the loss of ESI has caused prejudice to another party, then the court can order remedial measures "no greater than necessary to cure the prejudice"; whereas, if the Court finds that a party "acted with the intent to deprive another party of the information," then it may sanction the party in accordance with Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e).

67. The Court recognizes that, unlike federal courts, North Carolina courts do not presently require the party requesting sanctions to demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully. *See Henderson v. Wachovia Bank,*

145 N.C. App. 621, 629, 551 S.E.2d 464, 470 (2001) ("[T]he plain language of Rule 37 does not require a showing of willfulness."); *Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *8 ("[T]he party seeking Rule 37 sanctions need not show prejudice resulting from the sanctionable conduct.").

68.     But before the Court sanctions a party for discovery abuses related to ESI, it should consider the severity of the discovery abuse or failure and the prejudice, if any, suffered by the requesting party. *See Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *8 (noting that "prejudice to another party . . . influence[s] the court's discretion in determining the appropriate sanction"). When making such an assessment, the Court should be guided by Rule 34(b), which specifically governs the scope of ESI discovery, and Rule 26(1a), which addresses discovery in general and allows the Court to limit discovery based, in part, on proportionality. Additionally, while a finding of intentional misconduct is not necessary, the Court should consider whether a party intentionally acted to deprive the requesting party of potentially relevant information because willfulness or bad faith "influence [the] court's discretion in determining the appropriate sanctions." *Id.*

> **1.     Tuggle Duggins may have failed to take reasonable steps to preserve evidence between September 19, 2015, when its duty to preserve arose, and October 17, 2015, when it issued its litigation hold.**

69.     Tumlin asserts that Tuggle Duggins failed to take reasonable steps to preserve evidence related to this action because it did not implement procedures to prevent the double-deletion of e-mails related to this action and failed to issue a

litigation hold as early as May 2015 when Tumlin first announced his intention to leave the firm.

70. The obligation to preserve evidence begins when "a party is aware of circumstances that are likely to give rise to future litigation." *McLain*, 137 N.C. App. at 187, 527 S.E.2d at 718. While the initiation of a lawsuit is the typical event that puts a party on notice of its obligation to preserve evidence, the obligation "arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced." *Id.* (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991)). In *McLain v. Taco Bell Corp.*, the North Carolina Court of Appeals rejected the defendants' contention that they were not aware of the possibility of litigation because the parties had a meeting to discuss the alleged sexual harassment, which was the basis of the lawsuit, approximately seven months before the plaintiff initiated the lawsuit. *Id.* at 188, 527 S.E.2d at 718. The Court of Appeals determined that, even though litigation was not threatened at the meeting, the meeting itself was sufficient to put the defendants on notice of the importance of preserving documentation potentially relevant to the action. *Id.*

71. Tumlin contends that Tuggle Duggins should have reasonably anticipated litigation as early as May 2015, when he informed Tuggle Duggins of his intent to resign, because Tumlin believes that, at that time, the firm's management committee instituted a scheme to defraud him of his end-of-fiscal-year compensation. (*See* Compl. ¶ 59.) Tumlin argues that Mr. Hamilton, on behalf of the firm, agreed to Tumlin's last day and therefore Tuggle Duggins "had a duty to inform plaintiff that

leaving on the agreed upon date" would violate the thirty-day notice provision, because "[b]y remaining silent, and through the actions of the firm during and following termination of plaintiff's employment, [Mr.] Hamilton and the firm fraudulently led plaintiff to believe that he would receive the financial documentation and end of fiscal year compensation owed to him without objection." (Compl. ¶ 59.)

72. Rather, based on the specific facts in this record, the Court finds that a duty to preserve evidence arose after May 2015 and no earlier than September 19, 2015. The dispute as to Tumlin's compensation first arose on September 19, 2015 when Tumlin inquired about his end-of-fiscal-year compensation and Mr. Hamilton responded that Tuggle Duggins did not owe Tumlin any additional compensation. (*See* Compl. ¶¶ 31–32.) After that exchange, Mr. Hamilton instructed Tumlin to direct any further inquiries regarding this issue to Tuggle Duggins' attorney, Mr. Sharpless. (Compl. ¶ 33.) Tumlin contacted Mr. Sharpless on September 22, 2015. (Compl. ¶ 34.) After that interaction, the possibility of litigation was apparent, as all parties had obtained counsel by October 9, 2015. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. A.)

73. While it would have been prudent to issue a litigation hold at that time, Nathan Duggins did not e-mail all employees until October 17, 2015, at which time he instructed them to retain all e-mails related to Tumlin. (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. E, at 1.)

74. Based on the facts of this case, the Court does not believe that Tuggle Duggins needed to implement additional procedures after Mr. Duggins e-mail to

prevent employees from being able to double-delete e-mails.  The Court finds that a direct order to employees from a law firm's managing partner not to delete any communications regarding Wayne Tumlin is a reasonable step, particularly considering that Tumlin is searching for e-mails from firm directors, who the Court presumes are familiar with discovery obligations.  (*See* Def.'s Br. Resp. Pl.'s Mot. Disc. Sanctions Ex. E, at 1.)  Further, two or more partners would have had to double-delete an e-mail for it to be lost completely.

75.    The possibility that e-mails were lost between May 2015 and September 19, 2015 does not warrant sanctions because there is no basis to conclude that this litigation was reasonably anticipated during that period.  *See McLain*, 137 N.C. App. at 187, 527 S.E.2d at 718) (quoting Robert L. Tucker, *The Flexible Doctrine of Spoliation of Evidence: Cause of Action, Defense, Evidentiary Presumption, and Discovery Sanction*, 27 U. Tol. L. Rev. 67, 79 (1995)) (explaining that there must be evidence that "the 'spoliator was on notice of the claim or potential claim at the time of the destruction'"); *see also* Sedona Principles § 9, cmt. 9.b. ("[A]bsent special circumstances, organizations should not be required to preserve deleted ESI in connection with litigation.").  Thus, the question becomes whether potentially relevant evidence was lost during the four weeks after Tuggle Duggins' duty to preserve arose and before Tuggle Duggins issued a litigation hold.

   2.    **There is no evidence to suggest that potentially relevant e-mails were actually lost.**

76.    Federal courts have established that the failure to issue a timely litigation hold "does not warrant sanctions if no relevant information is lost,"

meaning the party seeking sanctions must show that "the sought-after evidence actually existed and was destroyed." *Orbit One Communs.*, 271 F.R.D. at 441. Further, federal courts also inquire whether the sought-after documents were likely "relevant," which in the discovery context means they were "reasonably calculated to lead to the discovery of admissible evidence." *See id.* at 440 (quoting Fed. R. Civ. P. 26(b)(1)); *see also DiStefano v. Law Offices of Barbara H. Katsos, PC*, No. CV 11-2893 (PKC) (AKT), 2017 U.S. Dist. LEXIS 72137, at *68 (E.D.N.Y. May 11, 2017) ("To determine whether the unpreserved emails would have been relevant to the claims and/or defenses raised in the case, the [c]ourt must look to the nature of the underlying . . . claims."); N.C. Gen. Stat. § 1A-1, Rule 26(b)(1).

77. The United States District Court for the Southern District of New York notes the important public policy reasons for requiring a party seeking sanctions to demonstrate the loss of potentially relevant evidence, explaining that due to the expansive nature of ESI, without such a requirement, "there is real danger that 'litigation [would] become a 'gotcha' game rather than a full and fair opportunity to air the merits of a dispute.'" *Orbit One Communs.*, 271 F.R.D. at 441 (quoting *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 685 F. Supp. 2d 456, 468 (S.D.N.Y. 2010)).

78. North Carolina courts have not directly addressed the issue presented by this case. But North Carolina courts require a party seeking an adverse inference instruction to show that pertinent or "potentially supportive" documents existed and were destroyed. *See Arndt*, 170 N.C. App. at 528, 613 S.E.2d at 281. Further, the

comments to Rule 34(b) explain that a party seeking access to the opposing party's entire electronic database must provide a "specific reason, beyond general suspicion, to doubt the information and that the burden of providing direct access is reasonable in light of the importance of the information and the circumstances of the case." N.C. Gen. Stat. § 1A-1, Rule 34(b) cmt. (2011). Thus, the Court concludes that, depending upon the facts and circumstances of the case, North Carolina appellate courts, consistent with federal courts, would require a showing that potentially relevant information was lost as a result of the delayed litigation hold to justify the imposition of sanctions.

79. While the Court cannot ignore the theoretical possibility that Tuggle Duggins' employees could have double-deleted responsive e-mails between September 19, 2015 and October 17, 2015, there is no evidence suggesting that any potentially relevant e-mails were actually lost during that time.

80. Tumlin seeks to find e-mails between Tuggle Duggins' management committee related to Tumlin's compensation, resignation, and any alleged scheme to avoid paying his end-of-fiscal-year compensation. Tuggle Duggins' management committee is composed of lawyers who are aware of the duty to preserve relevant evidence once litigation is reasonably anticipated, regardless of whether a formal litigation hold has been implemented. Further, Tuggle Duggins has produced e-mails from those lawyers. There is no evidence that any other person may have had and then double-deleted a relevant e-mail that would have otherwise been preserved and produced. The parties have been conducting discovery for over two years and, with

the exception of this issue, all discovery has been completed. After completing numerous depositions and receiving hundreds of e-mails as a result of Tuggle Duggins' six searches of its e-mail server, other than two inconsequential e-mails that have now been produced, Tumlin is unable to identify specific relevant information that is missing. *See Orbit One Communs.*, 271 F.R.D. at 442–43 (finding that sanctions were not warranted, even though plaintiffs failed to take reasonable steps to preserve information, because "there [was] insufficient evidence of any loss of discovery-relevant information" and "[n]o witness identified any significant document that ha[d] not been produced in discovery").

81. Tumlin contends that he should not be expected to identify e-mails that were actually lost until a third-party forensic examiner inspects Tuggle Duggins' e-mail server. The Court concludes that, at this stage, while he does not have to specifically identify the exact documents he contends are missing, Tumlin must at least provide some circumstantial evidence to suggest that potentially relevant information is missing in order to justify the burden of a forensic examination. *See Arndt*, 170 N.C. App. at 527–28, 613 S.E.2d at 281 (explaining that a plaintiff alleging spoliation must, in part, show that pertinent or "potentially supportive" information existed and was destroyed); *see also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006) (acknowledging that the plaintiff did not need "to show that specific documents were lost" for the court to issue a preservation order, but that he needed "to demonstrate that certain types of relevant documents existed and that they were

necessarily destroyed by the operation of the autodelete function on [defendant's] computers or by other features of its routine document retention program").

82. The Court does not find sufficient evidence to demonstrate that any potentially relevant information was lost due to Tuggle Duggins' failure to issue a litigation hold prior to October 17, 2015. Accordingly, the Court, in its discretion, concludes that sanctions are not warranted because Tuggle Duggins made good faith efforts to preserve evidence and there are not facts to suggest that any potentially relevant information was lost or destroyed.

3. **Even if the Court assumes potentially relevant e-mails were lost, the facts and circumstances of this case do not justify a forensic examination of Tuggle Duggins' e-mail server or any other sanctions.**

83. Even if the Court were to assume that responsive e-mails were lost during that four-week period as a result of Tuggle Duggins' delayed litigation hold, such assumption would not automatically warrant the sanctions Tumlin seeks.

84. When issuing sanctions pursuant to Rule 37(b), the Court must consider lesser sanctions available and determine what is appropriate based on the facts and circumstances of this case. *See Ray v. Greer*, 212 N.C. App. 358, 363, 713 S.E.2d 93, 97 (2011) ("[T]he trial court may determine the appropriate sanction in its discretion," but it "must consider lesser sanctions before imposing the most severe sanction available"); *see also Out of the Box Developers, LLC*, 2014 NCBC LEXIS 7, at *24.

85. In making this inquiry, the Court considers whether Tumlin has been prejudiced by the alleged loss of e-mails. The Court must determine, in its discretion, "whether the lost information is both unique and important to the litigation." Sedona

Principles § 14, cmt. 14.c. If the Court finds that the lost information is merely duplicative, then Tumlin has not been prejudiced and no remedial measures are appropriate. *See, e.g., Treppel*, 249 F.R.D. at 117 (finding that the burden the additional discovery "would impose on the defendants . . . outweighs its likely benefit" because the requesting party "failed to identify any reason to believe that the [requested discovery] would contain any document relevant to the litigation not already recovered").

87. The Court is also guided by Rule 26(b)(1a), which directs that the Court can limit discovery that is "unduly burdensome and expensive" in light of the facts and circumstances of the case, and the comments to Rule 34(b), which provides that a party seeking a forensic examination of opposing party's database from which it has already received information must provide a "specific reason, beyond general suspicion, to doubt the information and that the burden of providing direct access is reasonable in light of the importance of the information and the circumstances of the case." N.C. Gen. Stat. § 1A-1, Rule 34(b) cmt. (2011).

87. The Court concludes that Tumlin has not demonstrated a reason, beyond general suspicion, to justify a forensic examination of Tuggle Duggins' e-mail server. Tumlin is searching for e-mails between Tuggle Duggins' directors. For a relevant e-mail to have been lost the sender and all recipients of the e-mail would have had to double-delete the e-mail. Even assuming a Tuggle Duggins' employee double-deleted a potentially relevant e-mail, it is unlikely that all copies of the e-mail

were deleted, meaning any e-mail found during a forensic examination would be cumulative.

88. Without anything more than the mere speculation that both the sender and all recipients may have double-deleted a responsive e-mail during the four-week period when no litigation hold was formally in place, the Court finds that the burden of allowing Tumlin access to Tuggle Duggins' e-mail server greatly exceeds any potential benefit.

89. Additionally, after reviewing the record, the Court does not believe that a forensic examination would produce additional potentially relevant information sufficient to justify the delay and expense such examination would cause. Tuggle Duggins has represented that it does not believe double-deleted documents are recoverable. Tumlin merely speculates that such documents are recoverable; he has not produced an expert affidavit supporting his contention that the documents can be recovered.

90. Finally, in light of the extensive e-discovery that has already been conducted, the Court concludes that Tumlin has not demonstrated that a forensic examination of Tuggle Duggins' servers "is reasonable in light of the importance of the information and the circumstances of the case," which mainly concerns the enforceability of Tuggle Duggins' notice requirement against Tumlin. *Id.* at Rule 34(b) cmt.

91. Even though the Court is not awarding sanctions here, there are certainly lessons to be learned from this case. This case exemplifies why all parties

should create a detailed ESI protocol at the outset of discovery and should strive to be transparent as to how documents will be preserved and what searches will be conducted. The Court cannot condone Tuggle Duggins' failure to issue a more timely litigation hold. But, based on the facts and circumstances of this case, specifically the extensive searches conducted and the issues involved in this case, the Court finds that the burden, time, and expense of a third-party forensic examination is not warranted.

92. In sum, the Court finds that Tuggle Duggins did not intentionally act in a manner to deprive Tumlin of potentially relevant information, nor was there a general abuse of discovery obligations sufficient to support the Court's imposing sanctions. The Court also finds that Tuggle Duggins did not violate the June 2017 Order and September 2017 Order. Accordingly, Plaintiff's Motion is denied.

## F. **The Court Will Not Award Attorneys' Fees.**

93. In its June 2017 Order, the Court granted Tumlin partial relief on his Motion to Compel, but did not address the issue of attorneys' fees. (*See* Order Pl.'s Mot. Compel Disc.) Unfortunately, the discovery disputes in this action have resulted in substantial fees to both parties. The Court does not, however, assign fault for such expenses solely to Tuggle Duggins. The Court finds that Tumlin has contributed to those expenses and that it would be unjust to impose fees on Tuggle Duggins as a result of Tumlin's Motion to Compel.

94. Rule 37(a)(4) provides that the Court shall require the party "whose conduct necessitated the motion [to compel] . . . to pay to the moving party the

reasonable expenses incurred in obtaining the order, including attorneys' fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust." N.C. Gen. Stat. § 1A-1, Rule 37(a)(4).

95.     Plaintiff's motion to compel seemed premature as he was unable to specifically identify why the documents Tuggle Duggins planned to produce were insufficient. While the Court acknowledges there was a delay in Tuggle Duggins' document production, that delay was caused, in part, by Plaintiff's opposition to Tuggle Duggins Notice of Deposition of Tumlin, which was served prior to Plaintiff's discovery request. Tuggle Duggins made its first production of e-mails on August 19, 2016, less than three weeks after Plaintiff filed its motion to compel. Although Tuggle Duggins' first e-mail production was incomplete due to an inadvertent error with the software, Tuggle Duggins corrected this mistake, conducted another search, and made an additional production on November 8, 2016. Additionally, despite believing that it had sufficiently responded to Tumlin's discovery requests, Tuggle Duggins conducted an additional search of all employees' mailboxes that had not been searched previously in an effort to satisfy Tumlin's continued suggestion that documents were being withheld, prior to the Court compelling it to do so. On the other hand, Plaintiff waited until eight months after it filed its motion to compel to suggest specific search terms to be used and simply continued to proclaim that the searches were not satisfactory. On balance, the Court concludes that Tuggle Duggins

has been substantially justified in opposing Plaintiff's Motion to Compel and that Tumlin is not entitled to attorneys' fees pursuant to Rule 37(a)(4).

96. Further, the Court has found that Tuggle Duggins did not violate any Court orders, and therefore Tumlin is not entitled to an attorneys' fee award. *Gillespie*, 2017 NCBC LEXIS 44, at *14 (quoting *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674, 360 S.E.2d 772, 776 (1987)) (explaining that the court has the "inherent power" to order a party to pay the opposing party's "reasonable costs including attorney's fees for failure to comply with a court order").

## IV.    CONCLUSION

97. Based on the above findings and conclusions, the Court ORDERS as follows:

    a.    Plaintiff's Motion is DENIED;

    b.    Discovery in this action is closed;

    c.    Plaintiff has thirty days from the issuance of this Order to respond to Defendant's Motion for Summary Judgment;

    d.    Defendant has ten days from the filing of Plaintiff's Response to file a Reply Brief; and

    e.    Any additional summary judgment motions must be filed with supporting materials within thirty days of the date of this Order.

IT IS SO ORDERED, this the 22nd day of May, 2018.

/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge